NO. 07-07-0405-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 6, 2009
______________________________

LEE OLIVER BROUSSARD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 252ND DISTRICT COURT OF JEFFERSON COUNTY;

NO. 43230; HONORABLE LAYNE WALKER, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant Lee Oliver Broussard appeals from an order denying post-conviction DNA
testing. Appellant's attorney has filed a brief in compliance with Anders v. California, 386
U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and In re Schulman, 252 S.W.3d 403
(Tex.Crim.App. 2008) and certifies that there are no non-frivolous issues to appeal. 
Agreeing with appointed counselâs conclusion the record fails to show any arguably
meritorious issue that could support its appeal, we affirm the trial courtâs order. 
Â 
Â Â Â Â Â Â Â Â Â Â In August 1983, appellant was convicted by jury of sexual assault and sentenced
to 45 years of confinement. Thereafter, in 2006, appellant requested post-conviction DNA
testing. On August 1, 2007, the court denied appellantâs request based on a report and
accompanying affidavit from the Jefferson County Criminal District Attorneyâs Office, a
letter from the Beaumont Police Department, and a memorandum from the Jefferson
County Sheriffâs Department Regional Crime Laboratory.


 The court found that these
documents reflected no biological evidence was in the possession of the State of Texas
or the Court and accordingly, DNA testing was impossible. Appellant timely filed his
notice of appeal.
Â Â Â Â Â Â Â Â Â Â Thereafter, appellant's appointed appellate counsel filed a motion to withdraw and
a brief in support pursuant to Anders in which he certifies that he has diligently reviewed
the record and, in his professional opinion, under the controlling authorities and facts of this
case, there is no reversible error or legitimate grounds on which a non-frivolous appeal
arguably can be predicated. The brief discusses the procedural history of the case and the
basis for appellantâs request for post-conviction DNA testing. Counsel discusses the
applicable law and sets forth the reasons there are no arguably meritorious issues on
which to appeal. Counsel has certified that a copy of the Anders brief and motion to
withdraw have been served on appellant, and that counsel has advised appellant of his
right to review the record and file a pro se response. Johnson v. State, 885 S.W.2d 641,
645 (Tex.App.âWaco 1994, pet. ref'd). By letter, this Court also notified appellant of his
opportunity to submit a response to the Anders brief and motion to withdraw filed by his
counsel. Appellant has not filed a response. The State has filed a brief stating that
counsel for the State has examined the record, and agrees with appellantâs counselâs
conclusion.
Â Â Â Â Â Â Â Â Â Â In conformity with the standards set out by the United States Supreme Court, we will
not rule on the motion to withdraw until we have independently examined the record. 
Nichols v. State, 954 S.W.2d 83, 86 (Tex.App.âSan Antonio 1997, no pet.). If this Court
determines the appeal has merit, we will remand it to the trial court for appointment of new
counsel. See Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App.1991).
Â Â Â Â Â Â Â Â Â Â In his brief, counsel discusses the requisite elements that must be met for the court
to order DNA testing. We agree with counsel that appellant must first show evidence exists
that can be subjected to DNA testing. See Tex. Code Crim. Proc. Ann. art.
64.03(a)(1)(A)(i) (Vernon 2006) (a court may order post-conviction forensic DNA testing
only if it finds, inter alia, that the evidence sought to be tested still exists); Baranowski v.
State, 176 S.W.3d 671 (Tex.App.âTexarkana 2005, pet. refâd); Johnston v. State, 99
S.W.3d 698 (Tex.App.âTexarkana 2003, pet. refâd) (request for DNA testing properly
denied when evidence not found to still exist in a condition making DNA testing possible,
or that it has been subjected to a chain of custody sufficient to establish it has not been
substituted, tampered with, replaced, or altered in any material respect). Nothing in the
record points to the existence, at this time, of any such evidence. 
Â Â Â Â Â Â Â Â Â Â Counsel also notes a second potential issue regarding the effectiveness of
appellantâs trial counsel. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984) and Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986)
(establishing standard for effective assistance of counsel). We agree with counsel that the
record before us contains no support for a challenge to the effectiveness of appellantâs trial
counsel. 
Â Â Â Â Â Â Â Â Â Â We have made an independent examination of the record to determine whether
there are any arguable grounds which might support the appeal from the denial of post-conviction forensic DNA testing. We agree the record presents no arguably meritorious
grounds for review. Accordingly, we grant counsel's motion to withdraw


 and affirm the
order of the trial court.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice





Do not publish.



"71" SemiHidden="false"
 UnhideWhenUsed="false" Name="Colorful Shading Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00146-CV

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL A

Â 



JANUARY
4, 2011

Â 



Â 

IN THE MATTER OF THE MARRIAGE OF LEANNE FARRELL COLLIER AND ROBERT GREG
COLLIER AND IN THE INTEREST OF R.C.C., A CHILD



Â 



Â 

 FROM THE 99TH DISTRICT COURT OF LUBBOCK
COUNTY;

Â 

NO. 2007-539,120; HONORABLE BLAIR CHERRY, JUDGE



Â 



Â 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

Â 

Â 

OPINION

Â 

Appellant, Robert Greg Collier,
appeals a final decree of divorce that dissolved the marriage between himself
and appellee, Leanne Farrell Collier; named Leanne
sole managing conservator of their son, Robert Colt Collier; set GregÂs child
support obligation; and divided the community estate.Â  Greg presents ten issues by his appeal.Â  We will reverse and remand.

Â 

Background[1]

Â Â Â Â Â Â Â Â Â Â Â  Greg
and Leanne met online in early 2005.Â 
Leanne lived in New York, while Greg lived in Lubbock.Â  Leanne visited Greg a few times in Lubbock
before Greg asked Leanne to marry him.Â 
Leanne accepted, moved to Lubbock, and they got married in October
2005.Â  On March 6, 2007, Leanne gave
birth to their son, Colt.

Â Â Â Â Â Â Â Â Â Â Â  The
couple had a fairly tumultuous relationship prior to the birth of Colt, but
disagreements regarding child rearing greatly exacerbated the problems in the
relationship.Â  Within eight weeks of the
birth of Colt, the couple separated.Â  On
the day after Leanne left Greg, she filed for divorce.Â  Soon thereafter, Greg filed his counterpetition for divorce.Â  

Â Â Â Â Â Â Â Â Â Â Â  Following
trial on April 23 and 24 of 2008, the trial court orally granted the divorce,
found Greg at fault for the breakup of the marriage, made a finding of family
violence, appointed Leanne sole managing conservator of Colt, appointed Greg
possessory conservator of Colt, and ordered that GregÂs visitation with Colt
was to be Âsolely at the discretionÂ of Leanne.Â 
The trial court also made certain broad findings regarding the division
of the community, but asked the parties to submit additional briefing regarding
the appropriate division of the community estate.Â  The trial court signed its final decree of
divorce on February 5, 2009.

Â Â Â Â Â Â Â Â Â Â Â  Greg
timely requested findings of fact and conclusions of law, and separately
requested specific findings relating to the child support and possession orders.Â  When the trial court did not issue findings and
conclusions when they were due, Greg filed notices of past-due findings and
conclusions relating to each of his requests.Â 
The trial court issued findings of fact and conclusions of law on April
2, 2009.Â  Greg then requested additional
findings of fact and conclusions of law, which included, inter alia, a second request for statutorily required findings on
child support and possession.Â  The trial
court entered additional findings of fact and conclusions of law on April 23,
2009.Â  Greg timely filed notice of
appeal.

Â Â Â Â Â Â Â Â Â Â Â  By
ten issues, Greg appeals.Â  GregÂs first
four issues challenge the trial courtÂs determinations regarding custody of
Colt.Â  GregÂs fifth issue challenges the
trial courtÂs child support order on the basis that the trial court did not
enter statutorily mandated findings even after the same were properly
requested.Â  By his sixth issue and the
sole issue presented in his supplemental brief, Greg challenges the trial
courtÂs division of the community estate.Â 
By his seventh issue, Greg challenges the trial courtÂs award of
$100,000 in reimbursement to Leanne for contributions made by her and the
community in benefit of GregÂs separate property.Â  By his eighth issue, Greg contends that the
trial court improperly imposed discovery sanctions against him without notice
and hearing.Â  Finally, by his ninth
issue, Greg contends that the trial court erred in denying his motion for new
trial.Â  

Custody Issues

Â Â Â Â Â Â Â Â Â Â Â  By
his first four issues, Greg challenges the trial courtÂs determinations
regarding custody of Colt.Â  Specifically,
Greg challenges the trial courtÂs appointment of Leanne as sole managing
conservator of Colt, possession order that limits GregÂs access to Colt to the
discretion of Leanne, and refusal to afford Greg certain parental rights that
are statutorily afforded to possessory conservators.Â  Because of these rulings, Greg contends that
the trial court impermissibly infringed on GregÂs constitutional rights as a
parent.

Â Â Â Â Â Â Â Â Â Â Â  The
best interest of a minor child shall always be the primary consideration of the
court in determining the issues of conservatorship, and possession of and
access to the child.Â  Tex. Fam. Code Ann. Â§ 153.002 (West
2008);[2]
see Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).Â  In determining what is in the best interest
of a minor child, the trial court is given wide latitude.Â  Id.Â 
We review the trial courtÂs judgment regarding issues of
conservatorship, possession, and access for an abuse of discretion.Â  See id.; Niskar
v. Niskar, 136 S.W.3d 749, 753 (Tex.App.ÂDallas 2004, no pet.).Â  The test for abuse of discretion is whether
the trial court acted without reference to any guiding rules and principles or,
stated another way, whether the trial courtÂs act was arbitrary or
unreasonable.Â  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).Â  There is generally, however, no abuse of
discretion when there is some evidence to support the trial courtÂs decision;
thus, a trial court abuses its discretion when it could reasonably have reached
only one decision and fails to do so.Â  Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992).Â  Under an abuse of discretion standard, legal
and factual sufficiency are not independent grounds for asserting error, but
are relevant factors in assessing whether a trial court abused its
discretion.Â  Niskar,
136 S.W.3d at 753.

a.Â Â Â  Sole Managing Conservatorship

By his first issue, Greg contends
that the trial court abused its discretion in naming Leanne sole managing
conservator of Colt.Â  Greg cites the
statutory presumption that appointment of a childÂs parents as joint managing
conservators is in the best interest of the child.Â  See Â§ 153.131(b) (West 2008).Â  Greg then contends that there was no credible
evidence or insufficient credible evidence to rebut this statutory
presumption.Â  In response, Leanne points
to the trial courtÂs finding that Greg has a history and pattern of family
violence during the two years preceding the date that
the petition for divorce was filed as removing the presumption and authorizing
the trial courtÂs appointment of Leanne as sole managing conservator.

Â Â Â Â Â  It is presumed that the appointment of both parents of a child
as joint managing conservators is in the best interest of the child.Â  Id.Â 
However, this presumption is overcome if credible evidence is presented
that one parent has committed a history or pattern of child neglect, or
physical or sexual abuse against the other parent or the child.Â  Â§ 153.004(b) (West 2008).Â  It is for the trial court to determine
whether such credible evidence was presented.Â 
Coleman v. Coleman, 109 S.W.3d 108, 111 (Tex.App.ÂAustin 2003, no pet.).Â  When the parties testify to different
versions of the same encounter, the trial court is the sole judge of the weight
and credibility of the evidence.Â  Id.Â  This is so because the trial court is in a
better position than an appellate court to determine what is in the best
interest of the children because the trial court observed the parties and
witnesses, noted their demeanor, and had the opportunity to evaluate their
claims.Â  Stucki v. Stucki, 222 S.W.3d 116, 124 (Tex.App.--Tyler
2006, no pet.) (citing Martinez v. Molinar, 953 S.W.2d 399, 403 (Tex.App.--El
Paso 1997, no writ)).

Greg contends that the trial courtÂs
finding that Greg had a history or pattern of family violence is not supported
by credible evidence because all of the evidence of the incidents upon which
the finding is based was derived solely from LeanneÂs testimony and was not
corroborated by any other source.Â  The
incidents upon which the trial courtÂs finding is based include Greg tackling
and restraining Leanne while she was pregnant, shoving Leanne into a bathroom
and barricading her inside, ripping Colt away from LeanneÂs breast while he was
feeding, threatening to kill Leanne if she returned to the family home,
verbally abusing Leanne on multiple occasions, and forcing Leanne to sit idly
by while her son cried due to hunger.[3]Â  While we acknowledge that the majority of
these incidents are evidenced by nothing more than LeanneÂs testimony and that
Greg refuted that these events occurred, the trial court was able to observe
the demeanor of the parties and to assess the credibility of their testimony.Â  The trial court did not abuse its discretion
by believing the testimony of Leanne and disbelieving the contrary testimony of
Greg.Â  See id.Â  Further, the trial court did not abuse its
discretion by believing LeanneÂs testimony, even though testimony was offered that
Leanne has a tendency to exaggerate.Â  

Looking to the totality of the
evidence presented regarding whether Greg had a history or pattern of family
violence, we cannot conclude that the trial courtÂs finding was unsupported by
credible evidence, or that its determination of the credibility of the
witnesses constituted an abuse of discretion.Â 
Consequently, the trial courtÂs finding of a history or pattern of
family violence precluded it from appointing the parties joint managing
conservators of Colt.Â  See Â§
153.004(b).Â  As such, we conclude that
the trial court did not abuse its discretion in appointing Leanne sole managing
conservator of Colt.Â  We overrule GregÂs
first issue.

b.Â Â Â  Possession Order

By his second issue, Greg contends
that the trial court abused its discretion by entering a possession order that
effectively denies Greg access to Colt.Â 
This issue challenges the trial courtÂs order that GregÂs visitation
with Colt will be at the sole discretion of Leanne.Â  Specifically, Greg argues that the possession
order effectively terminates GregÂs parental rights without the safeguards
required in a termination proceeding, and that the possession order is
unenforceable by contempt.Â  Leanne
responds contending that the trial court based its possession order on GregÂs
history or pattern of family violence as well as its finding that GregÂs
untreated problems with impulsiveness and explosiveness pose a danger to
Colt.Â  Leanne contends that the trial
courtÂs possession order was not an abuse of discretion and that, if Greg
chooses to pursue the psychological evaluation and treatment recommended by Dr.
Wall, Greg could file a motion to modify seeking additional access to Colt.

The Texas Family Code provides that
there is a rebuttable presumption that the standard possession order: (1)
provides reasonable minimum possession of a child for a parent named as a
possessory conservator or joint managing conservator; and (2) is in the best
interest of the child.Â  Â§ 153.252 (West
2008).Â  However, a trial court may
deviate from the standard possession order depending on factors such as the
age, developmental status, circumstances, needs, and best interest of the
child; and the circumstances of the managing conservator and of the parent
named possessory conservator.Â  See
Â§ 153.256 (West 2008).Â  

When a trial court appoints a parent
possessory conservator, it can conclude that unrestricted possession would
endanger the physical or emotional welfare of the child, while restricted
possession or access would not.Â  See
In re Walters, 39 S.W.3d 280, 286 (Tex.App.ÂTexarkana
2001, no pet.).Â  The court can also
conclude that access would not endanger the physical or emotional welfare of
the child, but that access is not in the best interest of the child.Â  Id.Â 
However, the court cannot conclude, that all access, even restricted
access, would endanger the physical or emotional welfare of the child, because
such a conclusion would prevent the trial court from appointing the parent
possessory conservator.Â  Id.

However, even when the trial court is
justified in deviating from the standard possession order, the trial court must
maintain the power to enforce its judgment.Â 
In re J.S.P., 278 S.W.3d 414, 422 (Tex.App.--San Antonio 2008, no pet.).Â  To maintain this power, the order must be
sufficiently specific so as to be enforceable by contempt.Â  Id. at 422-23.Â  When the order appoints a parent as
possessory conservator, the trial court must specifically state the times and
conditions for possession of or access to the child unless a party shows good
cause why specific orders would not be in the child's best interest.Â  Â§ 153.006(c) (West 2008).Â  Even when restrictions are in the best
interest of the child, it remains the court's responsibility to specifically
define those terms in its decree.Â  In re J.S.P., 278 S.W.3d at 423; In re A.P.S., 54
S.W.3d 493, 499 (Tex.App.--Texarkana 2001, no pet.).Â  The judgment must state in clear and
unambiguous terms what the parties must do to comply with the possession order
in a manner that is specific enough to allow an aggrieved party to obtain
enforcement of the judgment by contempt.Â 
In re J.S.P., 278 S.W.3d at 423; In re A.P.S., 54 S.W.3d
at 499.

In the present case, the trial
courtÂs possession order provides that GregÂs Âvisitation with the child shall
be at the discretion of LEANNE FARRELL COLLIER.ÂÂ  While the trial court clearly expressed its
desire that Greg comply with the recommendations of Dr. Wall, no such
requirement is specified in the possession order or elsewhere in the divorce
decree.Â  The effect of the trial courtÂs
possession order is that Leanne is afforded complete discretion over GregÂs
possession of Colt and, as such, is unenforceable by contempt.Â  Consequently, the possession order could
effectively deny Greg any access to Colt while also denying Greg the remedy of
contempt against Leanne.

Because the order could deny Greg
access to Colt, we must determine whether the trial court concluded that a
complete denial of access is in the child's best interest.Â  While the trial court found that Greg had a
history or pattern of family violence and that his untreated problems with
impulsiveness and explosiveness pose a danger to Colt, the trial court's
appointment of Greg as possessory conservator implies that any threat he poses
to Colt can be remedied by restricted access to or possession of Colt.Â  Based on the evidence discussed in the
preceding issue, the trial court had sufficient evidence to conclude that Greg
would pose some danger to Colt if he were given unrestricted possession; however,
a complete denial of access was not warranted, and is inconsistent with the
trial courtÂs naming of Greg as possessory conservator.

In a factually similar situation, the
San Antonio court concluded that a possession order that denied a possessory
conservator any access to his child until a therapist recommended otherwise was
unenforceable by contempt and, therefore, was an abuse of discretion.Â  See Hale v. Hale, No.
04-05-00314-CV, 2006 Tex.App. LEXIS 747, at *9-*10 (Tex.App.ÂSan Antonio Jan. 25, 2006, pet. denied) (mem. op).Â  In Hale,
the trial court heard evidence that the possessory conservator may have
sexually abused his daughter or that he was ÂgroomingÂ her to be sexually
abused. Â Id. at
*6.Â  On this basis, the trial
court denied the possessory conservator access, but specified that the
possessory conservator could obtain visitation with his daughter upon the
recommendation of a therapist.Â  Id. at *8-*9.Â 
However, because the possession order did not name a therapist or
provide any guidelines to ensure that the best interest of the child was
protected, the possession order was reversed as lacking the specificity
required to make it enforceable by contempt.Â 
Id. at *9-*10.Â  

Here, GregÂs problems are not of such
a nature that a complete denial of access to Colt can be reasonably found to be
in the best interest of Colt.Â  Dr. Wall
testified that Greg should have Âno visits at all to visits with a professional
involvedÂ until he receives further evaluation and treatment.Â  ÂA parent
appointed possessory conservator should at least have periodic visiting
privileges with their child and should not be denied such, except in extreme
circumstances.ÂÂ  Id.
at *8.Â  Thus, professionally
supervised visitation would have afforded Greg some access to Colt, while
ensuring that ColtÂs best interest is protected.Â  Further, nothing in the possession
order or even elsewhere in the divorce decree identifies what actions Greg
would need to undertake to obtain the right to possession of or access to Colt.

Leanne relies on In re R.D.Y.,
51 S.W.3d 314 (Tex.App.--Houston [1st Dist.] 2001,
pet. denied), to establish that the trial court's order was sufficient.Â  In In re
R.D.Y., the trial court named a father, mother, and grandmother joint
managing conservators of the child.Â  Id. at 317.Â 
The grandmother was given the right to determine the residence of the
child and was allowed "sole discretion" to determine if the mother
was "mentally and physically capable of properly exercising her visitation
with the child."Â  Id.Â  The Houston court upheld the trial court's
order based on the judgeÂs discretion to place conditions on the mother's
visitation when necessary to protect the best interest of the child.Â  See id. at
324.Â  We disagree with the holding of the
Houston court in In re R.D.Y.Â  The authority upon which the Houston court
founded the In re R.D.Y. opinion does not support the Houston courtÂs
conclusion.Â  Specifically, the Houston
court cites Capello v. Capello,
922 S.W.2d 218 (Tex.App.--San Antonio 1996, no writ),
and Thompson v. Thompson, 827 S.W.2d 563 (Tex.App.ÂCorpus
Christi 1992, writ denied), for the proposition that the trial court may place
conditions or restrictions on visitation if they are in the best interest of
the child.Â  However, in Cappello, the San Antonio court upheld the trial
courtÂs restrictions on the environment in which the visitation would take
place, but did not uphold a complete denial of access to the child.Â  Cappello, 922 S.W.2d at 220. Â In
Thompson, the Corpus Christi court actually reversed the trial court for
failing to specify times and conditions for the parent to have access to the
child. Â Thompson, 827 S.W.2d at 569. Â Clearly,
neither of the cases relied on by the Houston court in In
re R.D.Y. upheld an order allowing one conservator complete discretion over
another conservator's visitation.Â 
Although a judge can rightfully restrict the times and conditions of a
parent's visitation, we respectfully disagree with the Houston court's
assessment that giving total discretion, unenforceable by contempt, to one
conservator constitutes a mere restriction on the conditions of visitation.

Because the trial courtÂs possession
order is, effectively, a complete denial of GregÂs access to Colt that is
unenforceable by contempt, we sustain GregÂs second issue.

c.Â Â Â  Rights Granted by Section 153.073[4]

By his third issue, Greg contends
that the trial court abused its discretion in denying him parental rights
identified in section 153.073 without making any findings that the denial of
these rights is in the best interest of Colt.Â 
Leanne did not directly respond to this issue.

The trial court did not make any
findings specific to the rights identified by section 153.073, which is a
prerequisite to limiting any of those rights.Â 
See Â§ 153.072 (West 2008).Â 
However, GregÂs citations to the record to support the trial courtÂs
denial of these rights are simply citations to the first page of the Final
Decree of Divorce.Â  A thorough review of
the divorce decree reveals that it does not affirmatively deny Greg these
rights.Â  Rather, the decree is silent as
to these rights.Â  As the statute that
grants these rights to parent conservators begins Â[u]nless
limited by court order,Â and neither the divorce decree nor any other order
limits these rights, we find no support in the record for GregÂs
characterization that the rights afforded Greg by section 153.073 have been
limited.

Having found no limitation on the
rights afforded Greg by section 153.073, we overrule
GregÂs third issue.

d.Â Â Â  Constitutional Rights as a Parent

By his fourth issue, Greg contends
that the trial courtÂs rulings in the divorce decree constitute an
impermissible infringement on GregÂs constitutional rights as a parent.Â  This issue essentially reasserts GregÂs
second and third issues as constitutional violations.Â  As we have sustained GregÂs second issue and
have not found any merit in GregÂs third issue, GregÂs fourth issue need not be
addressed and is, therefore, overruled.

Child Support Issue

Â Â Â Â Â Â Â Â Â Â Â  By
his fifth issue, Greg contends that the trial court abused its discretion in
failing to make statutorily mandated findings regarding its child support
order.Â  Leanne responds by contending
that any failure of the trial court to make specific findings is the result of
GregÂs failure to provide evidence of his income.Â  Leanne contends that the trial court did its
best with the evidence presented to determine GregÂs income, and applied the
statutory child support guidelines to that assessment of GregÂs income.Â  

Â Â Â Â Â Â Â Â Â Â Â  Section
154.130 requires a trial court to make certain findings when a party files a
written request for findings within 10 days after the date of the hearing, a
party makes an oral request for findings in open court, or when the amount of
child support ordered varies from the amount that would result by application
of the guidelines.Â  See Â§
154.130(a) (West Supp. 2010).Â  In such
situations, the trial court must make findings of the net resources of the
obligor and obligee, the percentage applied by the
court to the obligor's net resources that yields the child support obligation
set by the court, and, if applicable, the specific reasons that the amount of
child support ordered by the court varies from the amount resulting from
application of the guidelines.Â  See
Â§ 154.130(b).Â  These findings are
mandatory and the failure to make them when required constitutes reversible
error.Â  In re S.B.S.,
282 S.W.3d 711, 717 (Tex.App.--Amarillo 2009, pet.
denied).

Â Â Â Â Â Â Â Â Â Â Â  In
the present case, Greg timely filed a request for findings of fact and
conclusions of law.Â  The trial court
found that, from September 2005 through December 2007, GregÂs total income was
$124,699.00, or $4,618.00 per month.Â  The
trial court further found that GregÂs net monthly income during that period was
$3,371.80.Â  In its additional findings of
fact and conclusions of law, the trial court found that it intended to follow
the statutory guidelines in setting GregÂs child support, but, to the extent
that the child support ordered deviates from those guidelines, it was due to
GregÂs failure to provide complete financial information, and the amount
ordered is just and appropriate.Â  

Â Â Â Â Â Â Â Â Â Â Â  We
disagree with GregÂs contention that the trial court did not make the required
finding regarding GregÂs net resources.Â  The
amount of resources gained by Greg from September of 2005 through December of
2007 was found by the trial court to have come from farming and ranching
operations and oil income specifically.Â 
In addition, there was sufficient evidence presented to support the
trial courtÂs finding of GregÂs net resources during this period of time.Â  As such, we conclude that the trial court
properly found GregÂs net resources.

Â Â Â Â Â Â Â Â Â Â Â  However,
a review of the trial courtÂs findings of fact and additional findings of fact
makes it clear that the trial court did not make the requisite finding
regarding LeanneÂs net resources, even though there was substantial evidence
presented at trial regarding her income throughout the marriage.Â  In addition, the trial court did not identify
the percentage applied by the court to the obligor's net resources that yields
the child support obligation set by the court.[5]Â  The trial court repeatedly expressed its
desire to apply the statutory guidelines to determine GregÂs child support
obligation, both in open court and in its findings of fact and conclusions of
law.Â  While the trial courtÂs explanation
for any variance from the statutory guidelines might be sufficient, the absence
of the other requisite findings makes an assessment of the trial courtÂs
reasoning impossible[6]
and constitutes reversible error. Â See
id. 

Â Â Â Â Â Â Â Â Â Â Â  For
the foregoing reasons, we sustain GregÂs fifth issue.

Â 

Â 

Division of the Community Estate
Issues

Â Â Â Â Â Â Â Â Â Â Â  By
his sixth issue and his sole additional issue in his supplemental brief, Greg
challenges the trial courtÂs just and right division
of the community estate.Â  Specifically,
Greg contends that the trial court included corporate property assets and
liabilities in the community estate, the evidence was insufficient to support
the trial courtÂs valuation of horses awarded to Greg, and the division was so
disproportionate that the division was used by the trial court to punish Greg.Â  Leanne responds contending that the
purportedly corporate property that was included in the community had been
comingled with the community to such an extent that it could no longer be
separated from the community.Â  Further,
Leanne contends that the trial court did not err in accepting her valuation of
the property because her valuation was reasonable and Greg did not offer an
alternative valuation.Â  Finally, Leanne
contends that the disproportionate division of the community was equitable under
the circumstances, and was not used by the trial court as a means to punish
Greg.

Â Â Â Â Â Â Â Â Â Â Â  A
trial court is required to divide the property in a just and right manner.Â  Â§ 7.001 (West 2006); Finch v. Finch,
825 S.W.2d 218, 221 (Tex.App.--Houston [1st Dist.]
1992, no writ).Â  The trial court's
division of the community estate should be corrected on appeal only if the
trial court clearly abused its discretion by ordering a division that is
manifestly unjust and unfair.Â  Martin
v. Martin, 797 S.W.2d 347, 351 (Tex.App.--Texarkana
1990, no writ) (citing McKnight v. McKnight, 543 S.W.2d 863, 866 (Tex.
1976)). A presumption arises on appeal that the trial court correctly exercised
its discretion in dividing property in a divorce proceeding, and the burden
rests on the appellant to show that the record evidences that the division was
so disproportionate as to be unjust and unfair.Â 
Grossnickle v. Grossnickle, 935 S.W.2d 830,
836 (Tex.App.--Texarkana 1996, writ denied).Â  Because the values of the properties in the
community estate are evidentiary to the ultimate issue of whether the trial
court divided the properties in a just and right manner, the appellant must be
able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of
discretion.Â  Finch, 825 S.W.2d at 221.Â  A
reviewing court should remand the entire community estate for a new division if
it finds reversible error in a specific part of the division that materially
affects the trial court's just and right division of
the entire community estate.Â  Jacobs v. Jacobs, 687 S.W.2d 731, 732-33 (Tex. 1985); Grossnickle, 935 S.W.2d at 836.

a.Â Â Â  Corporate Property

Â Â Â Â Â Â Â Â Â Â Â  Whenever
the characterization of property is at issue in a divorce, courts are required
to presume that any property possessed by either spouse during the marriage is
community property. Â Â§ 3.003 (West 2006);
Moroch v. Collins, 174 S.W.3d 849, 856
(Tex.App.ÂDallas 2005, pet. denied).Â  To overcome this community presumption, a
spouse claiming that specific property is not part of the community must trace
the property, which entails establishing the time and means by which the spouse
obtained possession of the property.Â  See
Moroch, 174 S.W.3d at 856-57.Â  

While a spouseÂs ownership interest
in a corporation can be characterized as either separate or community property,
corporate assets and liabilities are owned by the corporation and, absent a
finding of alter ego, are not part of the community estate.Â  Thomas v. Thomas,
738 S.W.2d 342, 343 (Tex.App.ÂHouston [1st
Dist.] 1987, writ denied) (citing McKnight, 543 S.W.2d at 868).Â  Furthermore, while property acquired on the
credit of the community is community property, Goodridge
v. Goodridge, 591 S.W.2d 571, 574 (Tex.Civ.App.ÂDallas 1979, writ dismÂd),
once separate property character attaches to property, that character does not
change because community funds are spent to improve the property.Â  Leighton v. Leighton,
921 S.W.2d 365, 367 (Tex.App.ÂHouston [1st
Dist.] 1996, no writ).Â  Rather,
when community funds are used to improve separate property, the appropriate
remedy is a claim for community reimbursement.Â 
Id. at 368.Â  

Â Â Â Â Â Â Â Â Â Â Â  Greg
contends that the trial court included third-party corporate property in the
community estate, and, as a result, the trial courtÂs just and right division of
the entire community estate is materially erroneous.Â  However, in referencing the trial courtÂs
purported division of corporate liabilities, Greg cites this Court to the trial
courtÂs findings of fact and conclusions of law rather than to the divorce decree.Â  Such a citation is necessitated by the fact
that the divorce decree does not include any third-party liabilities in the
community estate.Â  While finding of fact D(3) includes a $148,000 Âbalance due on promissory note
executed by Lea Acres, Inc.[,] to Charles Craig,Â and a $553,707.30 Âseparate
property [actually Pioneer] debt for livestock secured by community assets,Â as
community debt, nothing in the divorce decree purports to divide these debts as
part of the community.

Â Â Â Â Â Â Â Â Â Â Â  The
divorce decree specifically found that Greg owned Pioneer Land and Cattle
Company as his separate property.Â  The
divorce decree also awarded all ownership interest in Lea Acres, Inc., to
Leanne.Â  Neither party to this suit
attempted to characterize the debts of these two corporations as anything other
than the property of the respective corporations.Â  As the divorce decree does not divide either
of these corporate debts, we conclude that the trial court did not abuse its
discretion because it did not include corporate liabilities in the community
estate.Â  Consequently, we overrule GregÂs
contention concerning the division of corporate debts.

Â Â Â Â Â Â Â Â Â Â Â  In
addition, Greg contends that the trial court abused its discretion by including
assets owned by Pioneer in the community estate.Â  Specifically, Greg contends that the trial courtÂs
award of ÂAll of the horses in his [GregÂs] possession, subject to any liens
thereon, except as otherwise awarded to wife [Leanne] hereinÂ is the inclusion
of corporate property within the community estate.Â  The entire evidentiary basis for GregÂs contention
is his own testimony that the horses belonged to Pioneer and a brief
testimonial statement by Leanne regarding the assets owned by Pioneer as
including Âthe horses.ÂÂ  However,
LeanneÂs inventory and appraisement identified ÂQuarterhorses
(130 head Â approximately)Â as part of the community estate.Â  While certain of the horses involved in this
divorce were identified as having been formally owned by Pioneer at one time,
no evidence was offered regarding when and the means by which Greg obtained possession
of the horses.Â  Further, those horses
that were specifically identified as having been formally owned by Pioneer were
the same horses which the trial court found Greg had given to Leanne.Â  In fact, the only evidence offered to show
the extent of PioneerÂs ownership of the horses was GregÂs testimonial estimate
that Pioneer owned 93 to 97 head of horses.Â 
However, Greg did not specify when or how these horses were
acquired.Â  Consequently, we conclude that
Greg failed to meet his burden of overcoming the statutory presumption that the
property possessed by him during the marriage was community property.Â  See Â§ 3.003; Moroch,
174 S.W.3d at 856-57.

b.Â Â Â  Valuation

Next, Greg contends that the trial
court abused its discretion in valuing the horses awarded to Greg at
$520,000.00, when Greg provided more detailed evidence that the appropriate
value of the horses would be, at most, $113,000.00.Â  Leanne responds that Greg cannot complain of
the trial courtÂs valuation of the horses because he failed to offer evidence
of the appropriate value of the property.Â 
The valuation of the horses complained of by this issue is not included
in the divorce decree but is, rather, contained in the trial courtÂs findings
of fact.

Â Â Â Â Â Â Â Â Â Â Â  A
trial court is not required to file findings of fact listing the value of each
item of property owned by the estates of the parties to a divorce suit.Â  Finch, 825 S.W.2d at
221.Â  A trial court is, however,
required to divide the property in a just and right manner. Id.Â  The values of the properties are evidentiary
to the ultimate issue of whether the trial court divided the properties in a
just and right manner.Â  Id.Â  It is the responsibility of the parties to
provide the trial judge with a basis upon which to make the division.Â  Id.Â 
One who complains of the way the trial court divided the properties must
be able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of
discretion.Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  In
the present case, the trial courtÂs valuation appears to have come from
LeanneÂs inventory and appraisement that Greg possessed ÂQuarterhorses
(130 head Â approximately)Â combined with her testimony that the horses could
sell for between $200 at a livestock auction to $7,500 if sold privately with a
little training put into the horse.Â  The
exact figure of the value of the horses found by the trial court can be
obtained if LeanneÂs estimate of the number of horses (130) is multiplied by
one of her estimates of what the horses could be sold for ($4,000).Â  We acknowledge that GregÂs testimony was more
specific and would support a different valuation.Â  However, a review of GregÂs testimony reveals
that, as with LeanneÂs testimony, it was full of estimates and guesses.[7]Â  Because neither party provided the trial
court with specific information regarding the number of horses owned by Greg,
the trial court was left in the position of assessing the credibility of the
partiesÂ estimated values.Â  Because Greg
failed to support his valuation of the horses with sufficiently specific
evidence, he cannot now complain that the trial courtÂs division of the
community estate was so unjust and unfair as to
constitute an abuse of discretion. Â See
id.Â  Further, because there was
evidence in the record that would support the trial courtÂs finding of fact
regarding the valuation of the horses and because the contrary evidence offered
by Greg is not sufficiently specific for us to say that the trial courtÂs finding
of the value of the horses is so against the great weight and preponderance of
the evidence, we cannot say that the trial court abused its discretion in its
valuation of the horses.Â  See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242
(Tex. 2001).

Â 

c.Â Â Â  Division of Community as Punishment

Greg next contends that the trial
court divided the community in such an unfair manner as to give rise to the
conclusion that the division was effectuated as a punishment of Greg.Â  While a trial court may consider the conduct
of the spouse at fault for causing a divorce in making its division of the
community estate, see Ohendalski v. Ohendalski, 203 S.W.3d 910, 914 (Tex.App.ÂBeaumont
2006, no pet.), it may not use the division of the community as a means to
punish the errant spouse.Â  See Young
v. Young, 609 S.W.2d 758, 762 (Tex. 1980).Â  

Â Â Â Â Â Â Â Â Â Â Â  In
the present case, when the corporate debts, which were not divided by the
divorce decree, are removed from the valuation of the community estate found in
the trial courtÂs findings of fact, the division of the community estate
actually greatly favored Greg.Â  Accepting
the trial courtÂs valuation of the horses and taking into account the community
debts that were divided by the divorce decree, Greg was awarded $418,371 from
the community estate, while Leanne was awarded only $94,188.Â  As a result, we conclude that Greg cannot
reasonably argue that the trial court punished him through its division of the
community estate.

Â Â Â Â Â Â Â Â Â Â Â  For
the foregoing reasons, we overrule GregÂs sixth issue and the sole issue
presented in his supplemental brief.

Reimbursement Issue

Â Â Â Â Â Â Â Â Â Â Â  By
his seventh issue, Greg contends that the trial court abused its discretion in
awarding reimbursement to LeanneÂs separate estate when insufficient evidence
was presented to support her claims for reimbursement.Â  As part of this issue, Greg contends that the
trial courtÂs findings of fact regarding the reimbursement award prevent Greg
from being able to present the issue on appeal.Â 
Leanne responds contending that the evidence was sufficient to establish
that, throughout the marriage, LeanneÂs salary was funneled into Pioneer.

An equitable right of reimbursement
arises when the funds or assets of one estate are used to benefit or enhance
another estate without receiving some benefit.Â 
Vallone v. Vallone, 644 S.W.2d 455, 459
(Tex. 1982).Â  However, one
contribution that is nonreimbursable is expenditures
for the living expenses of a spouse or child of a spouse.Â  See Â§ 3.409(2) (West 2006).Â  A trial courtÂs award for reimbursement must
not be arbitrary or unreasonable, and must be consistent with guiding rules and
principles.Â  In re
Cassel, No. 07-96-0268-CV, 1997 Tex.App.
LEXIS 2641, at *7-*8 (Tex.App.ÂAmarillo May 19, 1997,
no writ) (not designated for publication) (citing Downer, 701 S.W.2d at
241-42).Â  The proper measure of
reimbursement is the value of the enhancement to the benefited estate.Â  See Â§ 3.402(d) (West Supp. 2010).Â  The party claiming a right to reimbursement
has the burden of proof, and, on appeal of a reimbursement award, we must
examine all of the evidence in the record to determine if the challenged award
is supported by evidence that is so weak as to be clearly wrong and manifestly
unjust.Â  Raymond v.
Raymond, 190 S.W.3d 77, 82-83 (Tex.App.ÂHouston
[1st Dist.] 2005, no pet.).Â 
If we find reversible error that materially affects the trial courtÂs just and right division of property, we must remand
the entire community estate for a new division of the property.Â  Id. at 82.

Â Â Â Â Â Â Â Â Â Â Â  In
the present case, the trial court awarded Leanne a $100,000 reimbursement
award.Â  The divorce decree states that,
Âthe community estate and [LeanneÂs] separate estate are entitled to
reimbursement from the community estate and [GregÂs] separate estate and that
[Leanne] is entitled to a judgment against [Greg] of $100,000.00.Â  The Court further finds that the separate
estate of [Greg] is entitled to reimbursement from the community estate.ÂÂ  LeanneÂs inventory and appraisement identifies
that the community made payments to or on behalf of Pioneer in an amount of
$289,750, and separately makes a claim for reimbursement to the community for
payments made by the community for Pioneer of $137,000.[8]Â  The inventory and appraisement also
identifies that Leanne paid $32,216.03 to or on behalf of Pioneer and
$15,849.01 of community debt from her separate funds derived from an
inheritance.Â  Additionally, Leanne
offered an exhibit to evidence her expenditure of separate funds to purchase
lands.Â  Notably, the $46,695.62
expenditure reflected in this exhibit relates to payments made on a purchase of
land from Charles Craig.Â  It appears that
this land was purchased by Lea Acres, Inc., and, as such, would not reflect a
contribution to either a community asset nor a
contribution to GregÂs separate estate. Â See
Thomas, 738 S.W.2d at 343. Â While the record clearly reflects that Leanne
made contribution of community assets, specifically her salary, to GregÂs
separate estate, Pioneer, throughout the marriage, the contribution that is
specifically evidenced amounts to approximately $42,000.Â  Certainly, there was evidence that would
support that some deposits that were not specifically identified as coming from
LeanneÂs salary did, in fact, come from that source, but it is also clear that
deposits were made into the Pioneer account that were not derived from LeanneÂs
salary.Â  

As it was LeanneÂs burden to prove
her claims for reimbursement, we cannot say, from review of all of the evidence
in the record, that the evidence supports her claims for reimbursement in the
amounts specified in her inventory and appraisement.Â  Further, while sufficient evidence is
contained in the record to support the trial courtÂs award of some reimbursement
to Leanne, we can find no evidence that would justify the $100,000 award.Â  Consequently, we conclude that the trial
court abused its discretion in awarding Leanne a $100,000 reimbursement claim
against Greg.Â  Further, to the extent
that the trial court offset any part of the reimbursement claim based on its
finding that GregÂs separate estate was entitled to reimbursement from the community, the record does not reflect that Greg used funds
from his separate estate to contribute to the community in any way other than
those that are specifically defined as nonreimburseable.Â  See Â§ 3.409(2).

Â Â Â Â Â Â Â Â Â Â Â  Because
we conclude that the trial court abused its discretion in awarding Leanne
$100,000 as reimbursement for the community and her separate estatesÂ
contributions to GregÂs separate estate, we sustain GregÂs seventh issue.Â  Further, because we conclude that an
erroneous award of $100,000 in an estate that is worth a net $500,000
materially affects the trial courtÂs just and right division of the community estate, we remand the entire community estate for a new
division of the property.Â  See Jacobs,
687 S.W.2d at 732-33; Raymond, 190 S.W.3d at
82.

Â 

Evidentiary Issue

Â Â Â Â Â Â Â Â Â Â Â  By
his eighth issue, Greg contends that the trial court abused its discretion in
ÂsanctioningÂ Greg for discovery abuse without notice and hearing.Â  Leanne responds contending that the trial
court applied the applicable rule in the appropriate manner.

Â Â Â Â Â Â Â Â Â Â Â  Greg
argues that the trial court excluded certain evidence as a discovery sanction
under Texas Rule of Civil Procedure 215.Â 
Leanne argues that the trial court simply applied Texas Rule of Civil
Procedure 193.6, which provides that a partyÂs failure to make, amend, or
supplement a discovery response in a timely manner generally precludes the
party from introducing the evidence.Â  

Â Â Â Â Â Â Â Â Â Â Â  However,
a review of the record reflects that the trial court did not exclude the evidence
on the basis of either rule.Â  GregÂs
brief cites his offers of RespondentÂs Exhibits 3 and 4.Â  After Exhibit 3 was offered, the parties and
the court had a discussion regarding whether Greg disclosed this evidence in
discovery. Â Following this discussion, Greg
voluntarily withdrew the offer of the exhibit.Â 
Following the withdrawal of Exhibit 3, Greg offered Exhibit 4.Â  The parties and the court had a brief
discussion regarding the fact that the exhibit, identified as ÂFigures on
Profit & Loss Statement,Â did not identify the source of the deposits
reflected on the exhibit.Â  The trial
court sustained the objection stating, Âif those
arenÂt complete, then IÂll have to sustain her objection.ÂÂ  Thus, it is clear that the trial court did
not exclude the evidence as a ÂsanctionÂ against Greg, but rather sustained an
objection that the evidence was not complete.Â 


Since Greg does not challenge the
actual basis of the trial courtÂs ruling, we overrule GregÂs eighth issue.

Motion for New Trial

Â Â Â Â Â Â Â Â Â Â Â  Finally,
GregÂs ninth issue contends that the trial court erred in denying his motion
for new trial.Â  The argument for this
issue incorporates GregÂs arguments on all of the above issues.Â  As each preceding issue presented by Greg has
been addressed above, we need not specifically address GregÂs ninth issue.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  For
the foregoing reasons, we reverse the visitation, child support, and just and
right division of the community estate portions of the divorce decree.Â  In all other respects, we affirm the divorce
decree.Â  We remand the case to the trial
court for further proceedings consistent with this opinion.

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 











[1] Due to the nature of
the issues presented, the facts will be addressed more thoroughly in the
analysis of the issues presented below.





[2] Further reference to
provisions of the Texas Family Code will be by reference to Âsection ___Â or ÂÂ§
___.Â





[3] The focus of this
analysis is on GregÂs actions toward Leanne.Â 
The evidence that Greg had a history or pattern of family violence
directed to Leanne is significantly greater than the evidence that Greg was
violent toward Colt.





[4] Â§ 153.073 (West
2008).





[5] While this
percentage may be easily calculated by dividing the monthly child support
ordered by the trial court with the trial courtÂs finding that GregÂs net
monthly resources were $3,371.80, section 154.130(b) mandates that the trial
court perform this calculation and enter the results in a finding of fact.

Â 





[6] While the trial
courtÂs specific reason for deviating from the guidelines would justify an
increase in GregÂs child support obligation, it appears that the order setting
child support may actually be for less than the statutory guidelines would call
for. Â See Â§ 154.125 (West Supp.
2010).





[7] By way of example,
Greg testified that he possessed Âbetween 93 and 97 horses,Â that he had
Âroughly 12 stallionsÂ and Âabout 40 geldings.ÂÂ 
Further, LeanneÂs testimony was that the couple ÂalwaysÂ possessed about
130 head of horses throughout the marriage.





[8] No information is
provided as to how these two bases for reimbursement were derived nor whether they reflect separate claims for community
payments made to or on behalf of Pioneer.