**In the Interest of Christopher
WALTERS, A Child.**

No. 06–00–00040–CV.

Court of Appeals of Texas,
Texarkana.

Argued Nov. 21, 2000.

Decided Jan. 11, 2001.

Troy A. Hornsby, Miller, James, Miller, Wyly, Hornsby, LLP, Texarkana, for appellant.

Judy Hodgkiss, The Moore Law Firm, LLP, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Deborah Walters appeals from the trial court's judgment granting her divorce from Richard Walters. A jury trial was held on the issue of managing conservatorship of Christopher Walters, the couple's five-year-old son. The jury recommended that Richard be awarded sole managing conservatorship. In the divorce decree, the trial court appointed Richard sole managing conservator and Deborah possessory conservator. The trial court also entered

the following order regarding possession and access:

IT IS ORDERED AND DECREED that Deborah Walters, as a possessory conservator, shall have possession of the child at all times mutually agreed between the parties.

In its findings of fact and conclusions of law the trial court found that implementation of the standard possession order (TEX.FAM.CODE ANN. §§ 153.312, 153.313 (Vernon Supp.2001)) for Deborah's possession of Christopher is not in the best interest of the child; that Deborah is an alcoholic and has been one both before and during the marriage; that she has hidden her alcohol consumption throughout the marriage; that as a result of her alcohol consumption she placed Christopher in a potentially harmful position by becoming intoxicated to the point of passing out while she was alone with him; that certain parts of her testimony were not credible; that other parts of her testimony in this and other proceedings were false; and that she must exhibit a three-year period of sobriety before implementation of the standard possession order would be in Christopher's best interest.

On appeal, Deborah contends the trial court abused its discretion in entering its order regarding possession because (1) it effectively denies her possession or access without good cause; (2) it fails to specify the times and conditions for possession or access without a showing of good cause that a specific order is not in the best interest of the child; and (3) it deviates from the standard possession order without a sufficient showing that deviation from such order is in the best interest of the child. In addition, Deborah contends there is insufficient evidence to overcome the presumption in favor of appointing her joint managing conservator of Christopher, that the trial court erred in submitting the issue of managing conservatorship to the jury when neither party requested such appointment in their pleadings, and that the trial court erred in denying her a jury trial on the issue of access to Christopher.

Because most of Deborah's contentions center on the evidentiary basis for the trial court's order, a review of the evidence is necessary. In support of the trial court's order, Richard points to the following evidence: Deborah testified that she is an alcoholic. She began drinking when she was twenty-three years old, and her alcoholism progressed rapidly until she was drinking every night by the time she was twenty-eight years old. Also when she was twenty-eight, she was hospitalized for a drug overdose that involved a suicide attempt. Thereafter, she completed a thirty-day in-patient treatment program for alcoholism. By her own admission, however, she began drinking again about three days later.

Deborah and Richard married about two years later. Richard testified that Deborah told him about her alcoholism before they were married, but that she asserted her drinking was under control. Richard works as a helicopter pilot and was away from home every other week during the marriage. Deborah testified that she drank while Richard was away and that on more than one occasion she drank to the point of passing out while Christopher was in her care. Richard testified that he came home one night to find Deborah passed out in a chair and later discovered the chair was soaked with urine. Deborah admitted to having violent rages in front of Christopher when she was drunk. Richard testified that she physically attacked him one time in front of Christopher. When Richard filed for divorce, Deborah concealed her whereabouts for two and a half days by going to a hotel and drinking.

Richard contends the evidence shows that Deborah attempted to hide her drinking from him and from her employer. Deborah testified that she attempted to hide her drinking from Richard. Deborah and Richard both testified that she hid alcohol around their house. Deborah's supervisor testified that Deborah received

the highest performance evaluations. However, he admitted that he was not aware of her pattern of drinking, and he admitted that she had some problems with absenteeism.

The trial court found that Deborah's testimony regarding her recovery from alcoholism was not credible. In fact, the court found that Deborah gave false testimony at this and prior proceedings in an attempt to influence the court to give her managing conservatorship of Christopher. Deborah testified that she was a binge drinker who engaged only in periodic binges during her marriage. When confronted with statements she made to her counselor that she drank at least eight ounces of bourbon every night, Deborah disputed the frequency of her drinking. However, her counselor contradicted her testimony. He testified she told him she drank frequently over a ten-year period, especially when Richard was away, when she drank nearly every night.

Deborah testified at a prior hearing that she was attending Alcoholics Anonymous (A.A.). Yet, at the same time she told her counselor that she was not attending A.A. and refused to attend. It was only after the trial court ordered her to attend that she began attending.

Deborah's counselor testified that he instructed her not to have Christopher sleep with her because it might encourage him to become overly dependent on her. At some point, Deborah assured him that Christopher was not sleeping with her. Yet, Deborah testified that Christopher was sleeping with her after she had told her counselor that he was not.

In her challenge to the trial court's order, Deborah observes that despite her

alcoholism, she has maintained employment with the same employer for over ten years. She has no criminal record. She attends regular counseling and A.A. meetings and claims to have been sober for almost a year. Her counselor testified that there is no evidence she has been drinking during that time. Richard agreed. Deborah and her counselor both expressed the opinion that her life has improved over that year. Her counselor also expressed the opinion that she is not a danger to Christopher.

The best interest of the child is the primary consideration in determining conservatorship and possession of and access to the child. Tex.Fam.Code Ann. § 153.002 (Vernon 1996). A parent must be appointed sole managing conservator, or both parents must be appointed joint managing conservators, unless the trial court finds that doing so would not be in the best interest of the child because it would significantly impair the child's physical health or emotional development. Tex.Fam.Code Ann. § 153.131(a) (Vernon Supp.2001). If the trial court appoints a managing conservator, it may appoint one or more possessory conservators. Tex.Fam.Code Ann. § 153.006(a) (Vernon 1996). In fact, the trial court must appoint as possessory conservator a parent who is not appointed a managing conservator, unless it finds that doing so is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child. Tex.Fam.Code Ann. § 153.191 (Vernon 1996).

Though courts sometimes use the words possession and access interchangeably, they are used differently in the Texas Family Code.[1] A person with a right of

---

1. *Compare, e.g.,* Tex.Fam.Code Ann § 153.432 (Vernon 1996) (giving grandparents a right to sue for access to a grandchild); Tex.Fam.Code Ann. § 161.2011(c) (Vernon Supp.2001) (allowing a court in which a suit to terminate the parent-child relationship is pending to deny access to a parent who is indicted for certain criminal activity); Tex.Fam.Code Ann.

§ 263.307(b)(6), (7), (8) (Vernon 1996) (specifying factors certain agencies should use in determining whether parents can provide a safe environment for the child, including evaluations of and any abusive conduct or substance abuse by persons who have access to the child's home), *with, e.g.,* Tex.Fam.Code Ann. § 32.001 (Vernon 1996) and Tex.Fam.Code

access to a child may approach him, communicate with him and visit with him, but may not take possession or control of the child away from the managing conservator. *Hopkins v. Hopkins,* 853 S.W.2d 134, 137–38 (Tex.App.—Corpus Christi 1993, no writ). A person with a right to possession of a child may exercise possession and control of the child, to the exclusion of all other persons, including the managing conservator, during periods of possession. *Id.*

 Deborah contends the trial court's order effectively denies her possession of and access to Christopher by ordering that she have possession "at all times mutually agreed between the parties." The trial court has discretion to determine the terms of possession or access by a possessory conservator. *Thompson v. Thompson,* 827 S.W.2d 563, 566 (Tex. App.—Corpus Christi 1992, writ denied). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, i.e., whether the act was arbitrary or unreasonable. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990).

Deborah cites *Roosth v. Roosth,* 889 S.W.2d 445 (Tex.App.—Houston [14th Dist.] 1994, writ denied), which involved an order worded similarly to the order in the present case that the court of appeals found was incapable of enforcement by contempt and gave the managing conservator complete discretion to determine the times and conditions of possession and access. *Id.* at 452. The court held that the order's unenforceability and the absolute discretion it provided effectively denied the other parent's right of access. *Id.* Such a denial, the court held, could not be accomplished under then Tex.Fam.Code Ann. § 14.03(d) without a showing that access would endanger the physical or emotional welfare of the children, which

the court found lacking. *Id.; see also* Act of May 5, 1989, 71st Leg., R.S., ch. 617, § 8, 1989 Tex.Gen.Laws 2030, 2040 (repealed 1995) (current version at Tex.Fam. Code Ann. § 153.004 (Vernon Supp.2001), §§ 153.075, 153.191 (Vernon 1996)). The court also stated that the trial court's appointment of the parent as possessory conservator itself rebutted such a showing because, under Section 14.03(d), it encompassed an implicit finding that the parent's possession or access would not endanger the physical or emotional welfare of the children. *Roosth,* 889 S.W.2d at 451.

In opposition, Richard contends that a trial court can appoint a parent as possessory conservator, yet deny that parent access to the child. He cites the following language from *Hopkins,* 853 S.W.2d at 137–38:

If the trial court appoints a possessory conservator, it may grant, deny, restrict or limit the possessory conservator's possession of or access to the child, and may grant, deny, restrict or limit any rights, privileges, duties and responsibilities with respect to the child as are necessary to protect the child's best interest.... The trial court may, for example, appoint the parent a possessory conservator and deny that parent any access to or possession of the child, if it finds that such limitations are in the best interest of the child.

In *Hopkins,* the trial court refused to name the appellant possessory conservator, yet allowed him supervised access. *Id.* at 136. The court of appeals held that a trial court refusing to appoint a parent possessory conservator could not then allow the parent access to the child because in refusing to appoint the parent possessory conservator, the trial court must have found that possession or access is not in the best interest of the child. *Id.* at 138.

Ann. § 32.101 (Vernon Supp.2001) (giving a person who has actual care, control, and possession of the child the right to consent to treatment of a child under certain circumstances); Tex.Fam.Code Ann. § 102.005 (Ver-

non 1996) (giving standing to request adoption, or termination of parental rights and adoption, to an adult who has had actual possession or control of the child).

*Roosth* and *Hopkins* were both based on a version of Section 14.03(d), the relevant portion of which read:

The court shall appoint as a possessory conservator the parent who is not appointed as a sole or joint managing conservator unless it finds *that parental possession or access is not in the best interest of the child* and that parental possession or access would endanger the physical or emotional welfare of the child.... The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child shall not exceed those that are required to protect the best interest of the child.

Act of May 5, 1989, 71st Leg., R.S., ch. 617, § 8, 1989 Tex.Gen.Laws 2030, 2040 (repealed 1995) (emphasis added). The first part of Section 14.03(d) was repealed and enacted with slightly different language as Tex.Fam.Code Ann. § 153.191, which reads:

The court shall appoint as a possessory conservator a parent who is not appointed as a sole or joint managing conservator unless it finds that *the appointment* is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child.

*See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, §§ 1, 2, 1995 Tex.Gen.Laws 113, 151, 282 (codified at Tex.Fam.Code Ann. § 153.191 (Vernon 1996)) (emphasis added). At the same time, the Legislature enacted Tex.Fam.Code Ann. § 153.193 (Vernon 1996), which incorporates the latter part of former Section 14.03(d):

The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child.

■■■ Reading Section 153.191 in conjunction with Section 153.193, when a trial court appoints a parent possessory conservator, it can conclude that unrestricted possession would endanger the physical or emotional welfare of the child, but that restricted possession or access would not. The court can also conclude that access would not endanger the physical or emotional welfare of the child, but that access is not in the best interest of the child. *See Hopkins,* 853 S.W.2d at 137–38. It cannot conclude, however, that access, even restricted access, would endanger the physical or emotional welfare of the child, because such a conclusion would prevent the trial court from appointing the parent possessory conservator. *See Roosth,* 889 S.W.2d at 451.

■■■ Therefore, a trial court has two options regarding possession and access when it appoints a parent possessory conservator and decides that the standard possession order is not in the best interest of the child: (1) fashion an order that restricts possession or access so as to eliminate any danger to the physical or emotional welfare of the child; or (2) deny that parent possession and access.[2] However, because appointment of a parent as possessory conservator implies a finding that access by that parent will not endanger the physical or emotional welfare of the child, *Roosth,* 889 S.W.2d at 451, complete denial of access is limited to those situa-

---

**2.** By its terms, Section 153.193 allows for either a denial of possession or a restriction or limitation on possession or access. The Legislature could have used the words "denies a parent's right to possession of or access to a child" in Section 153.193, but did not. Arguably, therefore, the statute does not envision a complete denial of parental access in any situation. It must be remembered, however, that the best interest of the child is always the primary consideration in determining issues of possession and access. Tex. Fam.Code Ann. § 153.002 (Vernon 1996). Therefore, a severe restriction or limitation, even one that amounts to a denial of access, is permissible if it is in the best interest of the child.

tions in which the parent's access will not endanger the physical or emotional welfare of the child, but is not in the best interest of the child. So while the *Hopkins* court may be technically correct that a trial court may appoint a parent possessory conservator but deny that parent access to the child if it is in the best interest of the child to do so, complete denial of access should be rare.

Assuming the order in the present case denies Deborah *possession* of Christopher, the trial court could have done so only on a finding that her possession would endanger Christopher's physical or emotional welfare, but that such danger could be remedied by restricted possession or access. If the order in the present case operated to deny Deborah *access* to Christopher, the trial court could not make such an order unless it decided that Christopher's best interest warranted such an order, because having appointed Deborah possessory conservator, the trial court must have found that Deborah's access is not a danger to Christopher's physical or emotional welfare.

 From the evidence, we find there was sufficient basis for the trial court to conclude that Deborah posed some risk to Christopher were she given unrestricted possession. There was significant evidence that she had placed Christopher in danger in the past and that she had denied and concealed her alcoholism.

 We also find, however, that complete denial of access is not warranted. First, the trial court appointed Deborah possessory conservator, which implies a finding that any danger she poses to Christopher's physical or emotional welfare can be remedied by an order that restricts her access or possession. Second, the evidence supports imposing restricted access because, despite her alcoholism, the evidence shows that Deborah has remained functional. Her counselor testified that she does not pose a danger to Christopher. She has been employed at the same job for ten years despite her alcoholism.

We must therefore review whether the trial court's order denies or merely restricts Deborah's access. Deborah contends the trial court abused its discretion in failing to enter specific orders regarding access to Christopher. In an order appointing a parent as possessory conservator, the trial court must specify and expressly state the times and conditions for possession of or access to the child, unless a party shows good cause why specific orders would not be in the best interest of the child. Tex.Fam.Code Ann. § 153.006(c) (Vernon 1996).

As mentioned previously, the *Roosth* court held that a similarly worded order effectively denied access because it was unenforceable by contempt and gave the managing conservator absolute discretion over visitation. *Roosth*, 889 S.W.2d at 452. However, the courts in *Thompson*, 827 S.W.2d at 569, and *Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex.App.—Houston [1st Dist.] 1988, no writ), were also faced with an order similar to the one in the present case. Both courts held that greater specificity was required in the absence of a showing of good cause. *Thompson*, 827 S.W.2d at 569–70; *Wright*, 749 S.W.2d at 234. Significantly, both courts cited Tex. Fam.Code Ann. § 14.03(a), the precursor to current Section 153.006(c), which requires a showing of good cause why specific orders are not in the best interest of the child.

In *Hill v. Hill*, 404 S.W.2d 641, 642 (Tex.Civ.App.—Houston 1966, no writ), the trial court found the appellant was unfit to have access to his children without strict limitations and that such access would be contrary to the best interest and welfare of the children unless it was first consented to in writing by the appellee. The court of appeals construed the trial court's order as an attempt to restrict rather than deny the appellant access to his children. *Id.* at 643. The court held that the trial court should have set out the specific limitations

and safeguards in its order to guard the welfare of the children and avoid future litigation. *Id.*

 Reviewing the order in the present case, it is clear the trial court did not intend to completely deny Deborah access to Christopher, but to restrict her possession and access. A denial of possession or access should be ordered in plain, unambiguous language. The *Roosth* court expressed a legitimate concern that an order like the order in the present case is unenforceable by contempt and gives too much discretion to the managing conservator. However, the real problem with the trial court's order in the present case is that it is not sufficiently specific as to the times and conditions for Deborah's possession of or access to Christopher.

Richard contends there is good cause why specific orders are not in the best interest of the child. He contends the evidence shows that Deborah has placed Christopher at risk in the past and that he must have control so that if he sees abuse or neglect occurring he can take action immediately to protect Christopher. If that is the concern, the trial court could fashion an order to allow Deborah supervised access to Christopher. *See Allison v. Allison*, 660 S.W.2d 134, 137–38 (Tex. App.—San Antonio 1983, no writ) (holding that the trial court could have enjoined mother from removing the children from the county and from alienating the children's affection for their father, rather than giving her control over his access). It is somewhat incongruent to find that the best interest of the child requires restrictions on a parent's access, but to allow complete, unsupervised access if the other parent consents. *See Hill*, 404 S.W.2d at 643. We hold that the trial court erred in not sufficiently specifying the terms of Deborah's possession of or access to Christopher.

Deborah also contends there is insufficient evidence to support the trial court's finding that deviation from the standard possession order is in the best interest of the child. The Texas Family Code establishes a rebuttable presumption that the standard possession order provides reasonable minimum possession of a child and is in the best interest of the child. Tex. Fam.Code Ann. § 153.252 (Vernon 1996). On request, the trial court must state in the order the specific reasons for the variance from the standard order. Tex.Fam. Code Ann. § 153.258 (Vernon 1996). When ordering terms other than the standard possession order, the trial court must consider the guidelines of the standard possession order and may consider (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor. Tex.Fam.Code Ann. § 153.256 (Vernon 1996).

 In view of the evidence recited above, there was sufficient evidence to support deviation from the standard possession order. Deborah's past actions in putting Christopher at risk and covering up her excessive drinking warranted the trial court in ordering more restrictive access than is provided under the standard possession order.

In her fourth point of error, Deborah contends there is insufficient evidence to support the trial court's order appointing her as possessory conservator rather than joint managing conservator. The Texas Family Code establishes a rebuttable presumption that appointing the parents as joint managing conservators is in the best interest of the child. Tex.Fam.Code Ann. § 153.131(b) (Vernon Supp.2001). A parent must be appointed sole managing conservator or joint managing conservator unless the trial court finds that appointment of the parent would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development. Tex.Fam.Code Ann. § 153.131(a).

■ The evidence showed that Deborah put Christopher at risk in the past. There was also evidence that children of alcoholics are more likely to become alcoholics and that Deborah herself was the child of an alcoholic. This evidence supports the trial court's finding that appointing Deborah joint managing conservator is not in the best interest of the child. We overrule Deborah's fourth point of error.

In her fifth point of error, Deborah contends the trial court erred in submitting the question of managing conservatorship to the jury in a way that allowed the jury to appoint Richard sole managing conservator, when neither she nor Richard requested such appointment. She contends that both parties' pleadings requested that the parties be named joint managing conservators.

The record reveals that the parties agreed on the jury charge at the end of trial and that neither party objected to it.[3] Under TEX.R.CIV.P. 272, 274, and 279, an objection to the jury charge is required to preserve error.

Nevertheless, Deborah contends that a party cannot obtain jury findings on unpled issues unless the issue is tried by consent. She contends that trial by consent requires more than a one-time failure to object. She contends that her motion for new trial therefore preserves error on the issue.

■ TEX.R.CIV.P. 67 provides that when issues not raised by the pleadings are tried by implied consent, they must be treated in all respects as if they had been raised in the pleadings. The rule of trial by consent is limited to those exceptional cases where the parties clearly tried an unpled issue by consent. *Libhart v. Copeland,* 949 S.W.2d 783, 797 (Tex.App.—Waco 1997, no writ). The rule should be applied cautiously, not in doubtful situations, and only where it appears from the

record that the issue was actually tried, although not pled. *Id.*

■ An objection to a jury question on an unpled issue prevents the trial of that issue by implied consent. *Id.* However, when evidence relevant to both a pled and an unpled issue has been admitted without objection, the doctrine of trial by consent should not be applied unless clearly warranted. *Id.* To determine whether an issue was tried by consent, we must examine the record for evidence of *trial* of the issue, rather than evidence of the issue. *Id.*

■ Richard's pleadings requested the court to make orders for conservatorship and support of the child and that "Petitioner and Respondent, on final hearing, should be appointed joint managing conservators,...." Deborah's pleadings requested that "Cross–Petitioner and Cross–Respondent be appointed joint managing conservators,...." Her pleadings also requested the trial court to grant her the right of establishing the primary residence of the child and to require Richard to pay child support.

The jury was charged on the meaning of the terms conservator and joint managing conservator, and the factors to consider in determining whether to name a party joint managing conservator. The jury was also charged as to the respective rights and duties of sole managing conservators. In addition, the jury was charged that it was to consider the qualifications of each party without regard to their gender or marital status in determining which party to appoint sole managing conservator, whether to appoint a party joint managing conservator, and the terms and conditions of conservatorship.

The jury charge consisted of two questions. The first question asked, "Who should be appointed managing conservator of the child?" The jury was instructed to choose either Richard, Deborah, or both.

**3.** Richard contends that Deborah's attorney prepared the charge. This contention is not

supported by the record. The record simply reveals that the parties agreed to the charge.

The second question, which the jury was to answer if they named Richard and Deborah joint managing conservators, asked which of them should have the right to determine Christopher's primary residence.

Deborah contends that she could not have objected to evidence relevant to the issue of sole managing conservatorship because such evidence was also relevant to determining Christopher's primary residence. Even if this is true, we find that in the context of the pleadings and the jury charge, the issue was tried by consent.

The jury charge was directed at determining two issues: conservatorship of Christopher and his primary residence. Yet the parties' pleadings only raise one issue: Christopher's primary residence. The pleadings show that the parties were in agreement they should both be appointed joint managing conservators. Therefore, Deborah's failure to object to the jury charge waived any error.

This is not a situation in which a new cause of action was buried in a lengthy jury charge, making excusable a party's failure to object to the charge until the party filed its motion for new trial. Even if it were, we know of no authority that allows a party to preserve error with respect to variances between the pleadings and the jury's findings by filing a post-judgment motion for new trial. We overrule Deborah's fifth point of error.

■ In her sixth point of error, Deborah contends the trial court erred in denying her a jury trial on the issue of access. She contends that Richard requested a jury trial by filing a timely request and paying the jury fee and that his request for a jury trial also gave her the right to a jury trial. She contends that this issue is not waived by her failure to object because it only became clear that her right to a jury trial was being denied when the judgment was entered. She contends that she preserved error by objecting to the denial of a jury trial on the issue of access in her motion for new trial, which the trial court overruled.

TEX.FAM.CODE ANN. § 105.002(c)(1) (Vernon Supp.2001) entitles a party to a jury verdict on issues of the appointment of a managing conservator, joint managing conservators, or possessory conservators, and the determination of the child's primary residence. A party is not entitled to a jury verdict on the issues of child support, a specific term or condition of possession of or access to the child, or a right or duty of a possessory or managing conservator. TEX.FAM.CODE ANN. § 105.002(c)(2) (Vernon Supp.2001). The trial court may nevertheless submit an issue to the jury on these issues. TEX.FAM.CODE ANN. § 105.002(c)(3) (Vernon Supp.2001). In *In re Shaftner*, 900 S.W.2d 439, 441–42 (Tex.App.—Texarkana 1995, no writ), this Court held that a parent was entitled to have a jury determine the threshold issue of conservatorship, but that the trial court would have discretion as to the specific terms and conditions of access.

In the present case, Deborah was only entitled to a jury verdict on the issue of conservatorship. She was not entitled to a verdict on the terms of access. We overrule her sixth point of error.

Because we have held that the trial court's order regarding possession and access was not sufficiently specific as to the times and conditions for Deborah's possession of or access to Christopher, we reverse the judgment of the trial court and remand to that court for further proceedings.