# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00150-CV

### In the Interest of T. R. D.

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT
NO. A-06-0166-J, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Wendi Mae Davidson challenges the order appointing her parents the sole managing conservators of her son, T.R.D., and barring him from visiting her in prison. She complains that the trial court erred by holding the permanent custody hearing without notice to her because the waiver of service she executed was not intended to be permanent. She contends that denying her visitation with T.R.D. is not in his best interest and violates her parental rights. We affirm the order.

T.R.D. was born in the fall of 2001 to Davidson and an unknown father. T.R.D.'s younger brother, S.S., was born to Davidson during her marriage to Michael Severance. After Severance disappeared in March 2005, police discovered someone had used Davidson's work computer to search for information regarding decomposition of bodies in water. *See Davidson v. State*, 249 S.W.3d 709, 716 (Tex. App.—Austin 2008, pet. ref'd). Davidson's brother suggested that police search ponds on a ranch where Davidson kept a horse. *Id.* While police were questioning Davidson, her brother, and her parents, police overheard Davidson say to her parents, "I didn't kill him, but somebody did. I thought one of you did it, so I moved the body to protect you." *Id.* Davidson was indicted for murdering Severance and two counts of tampering with physical evidence

with the intent to impair. *Id.* She pleaded no contest to the charges, was convicted, and was sentenced to 25 years in prison. In this appeal, she asserts that she is "actually innocent" of the murder charge.

T.R.D.'s maternal grandparents[1] filed this suit on August 25, 2006, seeking conservatorship orders for the child. Three days later, Davidson filed a sworn Waiver of Service stating, in relevant part, the following:

> I acknowledge that I have been provided a copy of the Petition in Suit Affecting Parent-Child Relationship filed in this case. I have read and understand the contents of that document.
>
> I understand that the Texas Rules of Civil Procedure require, in most instances, that a party or respondent be served with citation. I do not want to be served with citation, and I waive the issuance and service of citation.
>
> I enter my appearance in this case for all purposes.
>
> I waive the making of a record of testimony in this case.
>
> I agree that this case may be taken up and considered by the Court without further notice to me.

Without further notice to Davidson, the trial court entered temporary orders on August 28, 2006, appointing the grandparents temporary sole managing conservators and appointing Davidson temporary possessory conservator. The order permitted Davidson visitation with T.R.D. supervised by the grandparents, family members, friends, or other competent adults designated by the grandparents.

---

[1] Because T.R.D.'s father is unknown, references to his grandparents mean only Davidson's parents.

In 2008, after the trial court sent notice of intent to dismiss this cause for want of prosecution, the grandparents requested a hearing on permanent orders. The grandparents' attorney stated that they were seeking final orders only because the case had been set for dismissal for want of prosecution and noted to the court that the grandparents would have been content to proceed under the temporary orders indefinitely. When noting the appearances of the interested parties, the court stated that Davidson had signed a waiver of service of process. T.R.D.'s grandfather was the only witness at the hearing. T.R.D.'s grandfather testified that he and his wife also had custody of T.R.D.'s younger brother, S.S., and that another trial judge had barred any contact between Davidson and the younger boy. (Both boys were younger than eight years old at the time of the hearing.) The grandfather testified that, consequently, he believed that it would not be in T.R.D.'s best interest to have contact with Davidson—at least not unsupervised contact—when his younger brother could not have any contact with her. The grandfather also testified that T.R.D.'s counselor recommended that they not take T.R.D. to visit Davidson in prison.

By order signed December 22, 2008, the trial court appointed T.R.D.'s grandparents T.R.D.'s sole managing conservators and named Davidson possessory conservator. The court, however, prohibited the grandparents from taking T.R.D. to visit Davidson in prison, and permitted visitation after Davidson's release from prison only after she sought such a right from the trial court. The order also requires Davidson, along with her parents, to "optimize the development of a close and continuing relationship" with T.R.D.

Davidson received a copy of the custody order after inquiring about the status of the case. Shortly thereafter, Davidson filed several documents including a motion to discontinue waiver of service. In that motion she asserted that the August 2006 Waiver of Service was intended

3

for the hearing on temporary orders only and that she had not intended the waiver to apply to other motions, hearings, or orders. She moved to set aside the judgment and moved for rehearing based on this lack of service. She asserted, among other things, that visitation with her was in T.R.D.'s best interest, that she was not a threat to him, that she had not abandoned him, that she had completed parenting and self-improvement classes, and that visits to prison would not harm him. Davidson also filed a motion to determine date of notice of the order, to which she attached an affidavit in which she asserted that she signed the Waiver of Service in order to facilitate the entry of the temporary orders in 2006. In an order denying several of Davidson's post-judgment motions, the trial court determined that Davidson's unrevoked Waiver of Service obviated any need to notify her of further proceedings. The trial court also found no basis to provide the relief requested in Davidson's motions to determine date of notice, to set aside judgment, and for rehearing.

On appeal, Davidson reiterates her assertion that the waiver, while not limited in scope, was intended by her to have been limited in scope. She also claims that the form of the waiver was drafted by lawyers for the grandparents who represented to her that it would apply only to the temporary orders proceedings. She argues that the lack of visitation is not in T.R.D.'s best interest and violates her constitutional rights as a parent. She asserts that she loves T.R.D. and that the trial court has unjustly "orphaned" her child.

Davidson challenged the application of the waiver in several motions filed in the trial court. Her argument here is essentially that the problems with the waiver should have resulted in a new trial. We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *See Cliff v. Huggins*, 724 S.W.2d 778, 778 (Tex. 1987). We defer to the trial court's determinations on credibility when considering evidence concerning a motion for new trial. *See*

4

*Shull v. United Parcel Serv.*, 4 S.W.3d 46, 51 (Tex. App.—San Antonio 1999, pet. denied). Davidson does not dispute that she signed the August 2006 Waiver of Service or contend that she did not understand that she was waiving notice, but asserts that the waiver was intended only to relate to the entry of temporary orders. The only evidence in the record about a limitation on the purpose for the Waiver of Service is the following passage in her Affidavit Concerning Date of Notice:

> I also signed a Waiver of service, only because someone at their attorney, Tim Edward's office told me this form would allow the temporary order to come into effect without an actual court hearing. This was supposed to be the only purpose of this form.

This statement does not support her allegation, made in other pleadings at the trial court and in her briefs here, that Edwards and others affiliated with him affirmatively told her that the Waiver of Service applied *only* to the temporary orders. The representation she swears occurred—that the waiver would allow the entry of temporary orders without a hearing—was true. Her assertion that the Waiver of Service was supposed to be limited does not allege or show that she was induced to sign the waiver through fraud. As set out above, the Waiver of Service plainly, unequivocally, and without limitation states "this case may be taken up and considered by the Court without further notice to me." There is no language limiting its scope to a particular motion within this cause. It is an open-ended waiver, signed in August 2006, that was not revoked before the order appointing her parents permanent managing conservators was signed on December 22, 2008. On the record presented, the trial court did not err by concluding in December 2008 that the Waiver of Service was valid and by refusing to set aside its order because of the lack of notice to Davidson of the hearing.

5

Davidson next contends that the ban on visitation is not in T.R.D.'s best interest. She does not challenge the appointment of her parents as managing conservators or her appointment as possessory conservator, but challenges the court's prohibition of visitation with the child while she is in prison.

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002 (West 2008). The trial court has wide latitude in determining best interests of the minor children. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). We review the trial court's decision for an abuse of discretion. *Id.* A district court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)). We may not reverse for abuse of discretion merely because we disagree with a decision of the district court. *Id.* (citing *Downer*, 701 S.W.2d at 242).

The evidence at the hearing was limited. T.R.D.'s grandfather testified that Davidson had been in prison for the previous two years as part of a 25-year term. He asked that visitation with Davidson be supervised either by the grandparents or someone they designate. He testified that he and his wife have custody of T.R.D.'s younger brother, S.S. The grandfather testified that, because Davidson was barred from any contact with S.S.—the child of the murdered man—he believed that visitation (at least unsupervised) between Davidson and T.R.D. was unworkable and not in T.R.D.'s best interest. The grandfather also testified that T.R.D.'s counselor had recommended that they

6

not take T.R.D. to see his mother in prison. The grandfather testified that he thought this order would be in T.R.D.'s best interest.

No evidence is in the record opposing the order.[2] Davidson criticizes her father's testimony about the counselor's recommendation as unsubstantiated hearsay. Davidson argues that general statutory policy and prison system policy encourages substantial contact between parents and children. She asserts that she has taken parenting classes and that she is no threat to T.R.D. Davidson contends that the prison visitation facility is family friendly and asserts that, as long as the children know that they will not stay with the mother and that the mother will not leave prison with the children, "no trauma is suffered by the child." She contends that the trial court's failure to terminate her parental rights means that she is not a danger to the child and should have visitation. *See In re Walters*, 39 S.W.3d 280, 286-87 (Tex. App.—Texarkana 2001, no pet.).

We find no abuse of discretion based on the record before us. While Davidson's confinement to prison is not alone sufficient to prohibit visitation, the testimony that T.R.D.'s counselor advised that the boys not visit their mother and that the grandfather believed no or limited visitation was in T.R.D.'s best interest due to the circumstances involving a brother of T.R.D. was uncontradicted at the hearing. Davidson's subsequent contrary assertions regarding her and T.R.D.'s desires and her other arguments do not change the state of the trial record. The trial court's decision to prohibit visitation is consistent with the opinion of the *Walters* court, which declared that "complete denial of access is limited to those situations in which the parent's access will not endanger the physical or emotional welfare of the child, but *is not in the best interest of the child*."

---

[2] Affidavits from other inmates about the benefits of visitation attached to Davidson's brief were not before the trial court and are not part of the record under review. *See* Tex. R. App. P. 34.1.

39 S.W.3d at 286-87 (emphasis added). The court's order that the parties optimize the development of a close relationship with T.R.D. is not fatally inconsistent with the visitation limitation. It means that the parties must optimize that relationship within the paradigm defined by his best interest. In this case, the trial court determined that the paradigm of his best interest requires no visitation at this time. Based on the record presented, we find no abuse of discretion.

Davidson argues finally that the ban on visitation violates her constitutional rights. A parent's rights to the companionship, care, custody, and management of his or her children are constitutional interests deemed far more precious than any property right. *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Parental rights, however, are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The emotional and physical interests of the child must not be sacrificed to preserve the parent-child relationship. *Id.* The trial court did not sever the legal parent-child relationship between Davidson and T.R.D. Although visitation is currently barred, other forms of communication are not, and Davidson asserts that she is making the effort to use them. The trial court's decision to name Davidson a possessory conservator without visitation rather than terminate her parental rights allows for the possibility of modification of the visitation order if circumstances change. *See* Tex. Fam. Code Ann. § 156.001 (West 2008), § 156.101 (West Supp. 2009). The trial court considered the evidence before it and the interests at stake, and struck this balance in favor of the child's best interest. Davidson has presented no error warranting reversal.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   June 18, 2010