

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00085-CV

IN THE INTEREST OF B.J.Y., A CHILD

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 12C1787-CCL

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In 2013, B.J.Y.'s[1] paternal grandparents (Grandparents) asked the County Court at Law of Bowie County for possession of and access[2] to B.J.Y. and were granted their request in an agreed order entered in mid-2013 (2013 Order) providing Grandparents with possession of and access to the child during specified periods of time and ordering B.J.Y.'s mother (Mother) to surrender the child at the beginning of each period.[3] Grandparents filed a petition to modify the 2013 Order by naming them sole or joint managing conservators with the right to designate the primary residence of the child. Following a bench trial, the trial court granted the petition, appointed Grandparents and Mother joint managing conservators, and gave Grandparents the exclusive right to designate B.J.Y.'s primary residence.

In this appeal, Mother argues that this action should be considered an original suit for conservatorship under Chapter 153 of the Texas Family Code and asserts that the trial court erred because there was insufficient evidence (a) that the appointment of Mother as sole managing conservator or granting her the right to determine B.J.Y.'s primary residence would significantly impair the child's physical health or emotional development[4] or (b) that Mother voluntarily relinquished care, control, and possession of the child to Grandparents.[5] Mother also asserts that

---

[1]We refer to all persons who were minors at the time the suit was filed by their initials or by a pseudonym. *See* TEX. R. APP. P. 9.9.

[2]*See* TEX. FAM. CODE ANN. §§ 153.432–33.

[3]The 2013 Order also adjudicated Grandparent's son to be the biological father of the child, changed the last name of the child from Y--- to L---, and ordered that the name of the father on the child's birth certificate be changed accordingly. However, to be consistent with the style of this case, we will refer to the child as B.J.Y.

[4]*See* TEX. FAM. CODE ANN. § 153.131(a).

[5]*See* TEX. FAM. CODE ANN. § 153.373 (Supp.).

Grandparents lacked standing to bring the suit because there was insufficient evidence that the child's present circumstances would significantly impair the child's physical health or emotional development.[6] In the alternative, Mother asserts that, if this action is considered a modification under Chapter 156 of the Texas Family Code, there was insufficient evidence to support the trial court's finding that modification of the 2013 Order was in the best interest of the child.

We affirm the trial court's judgment because (1) this action is a suit for modification under Chapter 156 of the Texas Family Code and (2) sufficient evidence supported the trial court's best-interest finding.

*(1)    This Action Is a Suit for Modification Under Chapter 156 of the Texas Family Code*

The order being appealed, titled "Order in Suit to Modify Parent-Child Relationship" (the Modification Order), finds that the allegations in the petition to modify were true and that modification was in the best interest of the child and appoints Grandparents and Mother joint managing conservators, with Grandparents having the exclusive right to designate the child's primary residence. On Mother's request, the trial court also entered findings of fact and conclusions of law.[7]

---

[6]*See* TEX. FAM. CODE ANN. § 102.004(a)(1).

[7]Among the trial court's findings of fact and conclusions of law were the following:

<u>Findings of Fact</u>

. . . .

3.    By an Agreed Order Adjudicating Parentage and Granting Grandparent[s] Possession and Access entered July 3, 2013[,] by the Court, [Jordan] (the son of [Grandparents]) was established as the biological father of the child, and [Grandparents] were granted possession [of] and access to the child.

3

. . . .

6.      Since the child was three years old[,] she has primarily resided with [Grandparents,] and they have had actual care, control, and possession of the child with the voluntary consent of [Mother].

7.      Just prior to filing suit to modify the parent-child relationship[, Mother] was in Florida on vacation with B.J.[Y]. and her 15-year[-]old daughter and another man and his family.

8.      While in Florida, [Mother] was arrested and jailed for Battery and Cruelty to a Child resulting from a physical altercation with [Mother]'s 15-year-old daughter and while [Mother] had been consuming alcohol.

9.      B.J.[Y]. was present at the arrest of [Mother].

10.     [Grandparents] were called and went to Florida to pick up B.J.[Y]. and returned to Texarkana.

11.     [Mother] was restrained from having contact with any minor unsupervised by the Florida Court.

        . . . .

16.     The child has done well in the primary care, control[,] and possession of [Grandparents].

        . . . .

18.     In addition to the assault on a minor, [Mother] has a significant history of drug use, various relationships with males, and instability.

19.     Although [Mother] appears to have some stability and to be drug free at this time, there has not been a reasonable amount of time to determine if [Mother] can remain stable and drug free.

### Conclusions of Law

1.      [Mother] voluntarily relinquished actual care, control, and possession of the child to the [Grandparents] for a period of one year or more.

2.      The appointment of [Mother] as sole managing conservator or joint managing conservator with the right to determine the primary residence of the child would significantly impair the child's physical health or emotional development.

3.      The Court bases the finding of significant impairment upon evidence of specific acts or omissions, particularly the assault of a minor family member by [Mother] and the amount of time in which [Mother] appears to have had some stability.

4

Both parties on appeal argue that this action should be considered an original suit under Chapter 153 of the Texas Family Code. The parties acknowledge that the 2013 Order granted Grandparents possession of and access to B.J.Y., but contend that order did not make a conservatorship determination.[8] In addition, the parties argue that the action should be considered an original action because the parties argued the effect of the parental presumption in Section 153.131 of the Texas Family Code and the trial court entered certain findings of fact consistent with rebutting the parental presumption. *See* TEX. FAM. CODE ANN. §§ 153.131(a), 153.373.

But the parties' arguments at trial and the trial court's findings of fact do not determine whether this action is an original suit or a suit for modification of a prior order.[9] Rather, to decide whether the action is an original suit or a suit for modification, we analyze the procedural history of the action and determine where the action fits in the statutory scheme set out in the Family Code. *See, e.g.*, *In re A.B.O.*, No. 06-14-00071-CV, 2015 WL 2236593, at *3 (Tex. App.—Texarkana May 12, 2015, no pet.) (mem. op.); *In re P.D.M.*, 117 S.W.3d 453, 456–57 (Tex. App.—

---

4.    The evidence supports the logical inference that some specific, identifiable behavior or conduct of [Mother] will probably have a negative effect on the child to the extent to overcome the parental presumption.

5.    That it is in the best interest of the child to appoint [Grandparents] and [Mother] as Joint Managing Conservators of the child with [Grandparents] having the exclusive right to designate the primary residence of the child without regard to geographic location.

[8]Neither party discusses the significance of the trial court's failure to expressly make a conservatorship determination. As we discuss later in this opinion, the 2013 Order did impact custody of the child.

[9]Even if we were to consider the trial court's findings and the parties' arguments, it appears that both the parties and the court understood this to be a suit for modification. Grandparents' petition specifically sought modification of the 2013 Order, and Grandmother testified that they had filed the suit to modify the 2013 Order. Also, the trial court entitled its final "Order in Suit to Modify Parent-Child Relationship" and found that the allegations in the petition to modify were true, as required by the statute pertaining to modification suits. *See* TEX. FAM. CODE ANN. § 156.101(a). The trial court's findings of fact and conclusions of law were also consistent with the statutes regarding modifications of prior orders. TEX. FAM. CODE ANN. § 156.101(a)(3).

Fort Worth 2003, pet. denied).  In that statutory scheme, Chapter 153 governs original proceedings regarding conservatorship, possession, and access, and Chapter 156 governs modification suits.  *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000); *see* TEX. FAM. CODE ANN. §§ 153.001–.434, 156.001–.105.  Determination of whether an action is an original suit under Chapter 153 or a suit for modification under Chapter 156 is consequential for at least two reasons.  First, the determination affects a party's standing to bring the action.  *Compare* TEX. FAM. CODE ANN. § 102.003(a) (setting forth fifteen classes of persons who have general standing to file an original suit), *and* TEX. FAM. CODE ANN. § 102.004(a) (setting forth when, in addition to standing provided under Section 102.003, a grandparent may file an original suit requesting managing conservatorship), *with* TEX. FAM. CODE ANN. § 156.002 (setting forth those persons who may file a modification suit).  In addition, the parental presumption contained in Section 153.131[10] applies only to original suits under Chapter 153.  *A.B.O.*, 2015 WL 2236593, at *3; *P.D.M.*, 117 S.W.3d at 455.  In *V.L.K.*, the Texas Supreme Court pointed out that "the Legislature included the [parental] presumption in Chapter 153 which governs original proceedings, but did not include the presumption in Chapter 156 which governs modifications."  *V.L.K.*, 24 S.W.3d at 343.  Consequently, "[b]ecause the Legislature did not express its intent to apply the [parental] presumption in Chapter 156 modification suits, courts should not apply the presumption in those cases."  *Id.*

---

[10]Section 153.151 provides:

> [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

TEX. FAM. CODE ANN. § 153.131(a).

6

Both Chapter 153 and Chapter 156 are contained in Title 5 of the Texas Family Code, which governs parent-child relationships and suits affecting those relationships. *See* TEX. FAM. CODE ANN. §§ 101.001–266.013 (Supp.). As pertaining to this case, a "suit affecting the parent-child relationship" (SAPCR) is defined as "a suit filed as provided by [Title 5] in which the appointment of a managing conservator or a possessory conservator, [or] access to or support of a child, . . . is requested." TEX. FAM. CODE ANN. § 101.032(a). The effect of each of these requests is to alter, limit, or burden, in one way or another, a parent's "fundamental liberty interest" "in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.).

Among the SAPCRs that may be brought under Chapter 153 is a suit by biological or adoptive grandparents for access to or possession of a grandchild. *See* TEX. FAM. CODE ANN. §§ 153.432–.433. This suit may be brought either as an original suit under Chapter 153 or as a suit for modification under Chapter 156. TEX. FAM. CODE ANN. § 153.432(a). In this case, Grandparents brought their action seeking possession of and access to B.J.Y. as an original suit under Chapter 153. This resulted in the 2013 Order that granted Grandparents exclusive periods of possession of the child and that ordered Mother to surrender the child to Grandparents at each of these periods of possession. "A person with a right to possession of a child may exercise possession and control of the child, to the exclusion of all other persons, including the managing conservator, during periods of possession." *In re Walters*, 39 S.W.3d 280, 285 (Tex. App.—Texarkana 2001, no pet.) (citing *Hopkins v. Hopkins*, 853 S.W.2d 134, 137–38 (Tex. App.—Corpus Christi 1993, no writ)). In other words, the 2013 Order reflects the trial court's

7

determination that Grandparents, during the periods of exclusive possession, should have temporary and limited custody[11] of the child, to the exclusion of Mother.

Once a trial court has issued a final order in a SAPCR, it acquires continuing, exclusive jurisdiction over all of the Title 5 matters that concern the child. TEX. FAM. CODE ANN. § 155.001. Under Chapter 156, "[a] court with continuing, exclusive jurisdiction may modify an order that provides for the conservatorship, support, or possession of and access to a child." TEX. FAM. CODE ANN. § 156.001. Thus, "[a]fter a court makes an original custody determination, a party may move to modify that determination." *V.L.K.*, 24 S.W.3d at 342 (citing TEX. FAM. CODE ANN. § 156.002).[12] In this case, the 2013 Order made an original custody determination, and the trial court acquired continuing, exclusive jurisdiction of any subsequent SAPCR. Grandparents later filed their Amended Petition to Modify Parent-Child Relationship and sought to modify the original custody determination in the 2013 Order so that they would be appointed sole or joint managing conservators of B.J.Y. Since Grandparents' petition sought to modify a prior final SAPCR order, we find that this action is a suit for modification under Chapter 156.[13]

---

[11]In another chapter of Title 5, the Legislature has recognized that possession of or access to a child is a form of custody. Section 107.101 defines "[c]hild custody evaluation" as "an evaluative process ordered by a court in a contested case through which information, opinions, recommendations, and answers to specific questions asked by the court may be . . . (A) made regarding . . . (ii) possession of or access to a child, including the terms and conditions of possession or access." TEX. FAM. CODE ANN. § 107.101(1)(A)(ii).

[12]Section 156.002 provides, "A party affected by an order may file a suit for modification in the court with continuing, exclusive jurisdiction." TEX. FAM. CODE ANN. § 156.002(a).

[13]Since this action is a suit for modification under Chapter 156, the parental presumption contained in Section 153.131(a) of the Texas Family Code does not apply. *See V.L.K.*, 24 S.W.3d at 343. Consequently, we overrule Mothers first, second, and third issues, all of which were premised on this action being an original suit under Chapter 153 and on the applicability of the parental presumption. Mother's fourth issue challenges Grandparents' standing under Section 102.004 of the Texas Family Code. However, that section applies only to an original suit filed by a grandparent. *See* TEX. FAM. CODE ANN. § 102.004(a). As we have previously noted, Section 156.002 provides that a person affected by a SAPCR order may file a suit for modification. *See* TEX. FAM. CODE ANN. § 156.002(a).

*(2)*     *Sufficient Evidence Supported the Trial Court's Best-Interest Finding*

Section 156.101 provides that a trial court

(a)     . . . may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:

(1)     the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:

(A)     the date of the rendition of the order; or

(B)     the date of the signing of a mediated or collaborative law settlement agreement on which the order is based;

(2)     the child is at least 12 years of age and has expressed to the court in chambers as provided by Section 153.009 the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child; or

(3)     the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

TEX. FAM. CODE ANN. § 156.101(a).

In its Modification Order, the trial court found that the modification requested by Grandparents was in the best interest of the child.  Also, in its findings of facts and conclusions of law, the trial court found that it was in the best interest of the child to appoint Grandparents and Mother as joint managing conservators with Grandparents having the exclusive right to designate the primary residence of the child.  It also found that Mother voluntarily relinquished actual care,

---

Consequently, Grandparents, who were parties to, and affected by, the SAPCR order they sought to modify, had standing to bring this suit for modification.  We overrule Mother's fourth issue.

control, and possession of the child to Grandparents for a period of one year or more. Mother challenges the sufficiency of the evidence supporting only the trial court's best-interest finding.[14]

"We review the trial court's decision to modify conservatorship under an abuse of discretion standard." *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle." *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)). "Under this standard, legal and factual sufficiency are not independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion." *Id.* (citing *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.); *In re Davis*, 30 S.W.3d 609, 614 (Tex. App.—Texarkana 2000, no pet.)). "In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion." *Id.* (citing *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.)).

Since Mother did not have the burden of proof at trial, legal sufficiency is analyzed as a no-evidence challenge. *A.B.O.*, 2015 WL 2236593, at *6 (citing *Giron v. Gonzalez*, 247 S.W.3d 302, 306 (Tex. App.—El Paso 2007, no pet.) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58

---

[14]In this same issue, Mother asserts that the trial court erred in failing to make a finding that the change in custody would be a positive improvement for the child. Mother argues that Section 156.101 requires the trial court to find that a change in custody would be a positive improvement for the child. Prior to September 1, 2001, Section 156.101 provided that the appointment of a new sole managing conservator could only be made if the appointment would be a positive improvement for the child. Act of May 22, 2001, 77th Leg., R.S., ch. 1289, 2001 Tex. Gen. Laws 3108, 3109 (amended 2003, 2009) (current version at TEX. FAM. CODE § 156.101(a)). However, in 2001, the Legislature substantially amended Section 156.101 and removed the requirement that a change in conservatorship be a positive improvement for the child. *Id.*; *see* TEX. FAM. CODE ANN. § 156.101(a).

10

(Tex. 1983)).  As such, we "view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary."  *Id*. (quoting *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001) (citing *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex. 1992)).

"In assessing factual sufficiency, we are to consider all of the record evidence, not just the evidence supporting the judgment."  *Id*. (quoting *In re G.R.W.*, 191 S.W.3d 896, 899 (Tex. App.— Texarkana 2006, no pet.) (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)).  The trial court's findings are set aside "only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, shock the conscience, or clearly demonstrate bias."  *Id*. (quoting *In re C.R.J.*, No. 06-13-00053-CV, 2014 WL 199209, at *5 (Tex. App.—Texarkana Jan. 17, 2014, no pet.) (mem. op.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

As the fact-finder in a bench trial, the trial court determines the credibility of the witnesses and the weight of their testimony.  *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).  As sole arbiter of a witness's demeanor and credibility, the trial court may believe all, part, or none of a witness's testimony.  *In re E.M.*, No. 06-17-00083-CV, 2017 WL 5586633, at *2 (Tex. App.— Texarkana Nov. 21, 2017, no pet.) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam)).

The Texas Family Code does not list the factors to be considered by the trial court in its determination of a child's best interest in a modification proceeding.  However, the Texas Supreme Court has set forth a non-exclusive list of factors to be considered in deciding a child's best interest:

(A) the desires of the child, (B) the emotional and physical needs of the child now and in the future, (C) the emotional and physical danger to the child now and in the future, (D) the parental abilities of the individuals seeking custody, (E) the programs available to assist these individuals, (F) the plans for the child by these individuals, (G) the stability of the home, (H) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one, and (I) any excuse for the acts or omissions of the parent.

*A.B.O.*, 2015 WL 2236593, at *7 (quoting *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (citations omitted)). Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest. *In re M.R.*, 243 S.W.3d 807, 820 (Tex. App.—Fort Worth 2007, no pet.). Further, the amount of contact between the parent and child, the parent's failure to provide financial and emotional support, continuing criminal history, and past performance as a parent are all relevant in determining the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In this case, the trial court made several findings regarding disputed facts relevant to its best-interest finding. First, the court found that B.J.Y., who was eight years old at the time of trial, had primarily resided with Grandparents since she was three years old and that the Grandparents have had actual care, control, and possession of the child with the voluntary consent of Mother during that time. The evidence at trial supported this finding. Grandmother testified that Grandparents had kept the child on nights and weekends in 2013, that they had kept her five days and nights a week since 2014 or 2015, and that B.J.Y.'s primary residence had been with them since that time. She testified that B.J.Y. had basically lived with them the past five years, that they had made sure that B.J.Y. had what she needed, and that they have provided her with a stable home environment and with set bedtimes, meals, and activities. Mother admitted that, while she was

12

working in Hot Springs from 2013 through 2015, Grandparents took care of B.J.Y. at least four days and nights a week and that they co-parented with her. She also testified that B.J.Y. had attended Malta school, near Grandparents' home, during all of her elementary school years, rather that at Pleasant Grove where Mother lives. Although she disagreed that B.J.Y. spent more time with Grandparents from 2013 through 2016 than with her, Mother admitted that that was the case in 2017 and 2018. She also admitted that B.J.Y., while residing with Grandparents, has been involved in church activities, dance, cheerleading, basketball, and softball. Based on these findings and the supporting evidence, we find that the second, fourth, and seventh *Holley* factors favor Grandparents having the primary care of B.J.Y.

In addition, the trial court found that, shortly before this modification suit was filed, Mother had taken B.J.Y. and her fifteen-year-old sister, Amber, to Florida on vacation, where Mother was arrested for battery and cruelty to a child that resulted from a physical altercation with Amber after Mother had consumed alcohol, all in the presence of B.J.Y. These findings were also supported in the evidence. Photographs of Amber taken shortly after the altercation, along with a copy of the Florida arrest report, were introduced into evidence without objection. The photographs show Amber with a blackened right eye and abrasions under the left eye. The arrest report contains Amber's statements to police that Mother had been drinking, that Mother had gotten out of hand, and that Amber had begun walking away. Mother followed her and tried to get her to return with her. When she refused, Mother attacked her, hit her face, scratched her, and threw her on the ground. The officer observed that Amber had a swollen right eye, an abrasion under her left eye, bruises on her body, and scratches all over her face and neck. Mother told the officer that she had

13

not laid a hand on Amber and that she suspected Amber had inflicted her own injuries. The officer noted that he had not observed any injuries on Mother. Based on the statements and physical evidence, the officer believed that Mother had intentionally caused physical injuries to Amber.

At trial, Mother denied that alcohol was involved and maintained that Amber had attacked and beaten her, and that Amber then punched herself twice in the face. Although Mother admitted to having been arrested and charged with battery and cruelty to a child, she testified that the charges were dismissed. As the determiner of the witnesses' credibility, the trial court could have reasonably concluded that the officer's assessment of the events was more reliable than Mother's testimony.

The evidence also showed that Grandparents had obtained counselling for B.J.Y., in part because of the trauma of the Florida events. Although Mother downplayed the significance of the Florida events in the need for counselling, she admitted that it was "very, very traumatic" for B.J.Y. In addition, Mother testified that, as a result of a drug charge, she had served two and one-half years of community supervision and had completed it a few months before trial. She testified that the original twelve-month community supervision had been extended two times: once for failure to pay her fees and failure to do community service and another time because of the Florida charges and leaving Bowie County without permission.

Mother testified that, during her community supervision and this litigation, she never failed an alcohol or drug test, although the first tests did not test for alcohol. However, the evidence also showed that, during this litigation, Mother would delay getting a scheduled test for several hours

14

or days.  Based on these findings and the supporting evidence, we find that the third and eighth *Holley* factors also favor Grandparents having the primary care of B.J.Y.

The attorney ad litem testified that she had visited with B.J.Y. at both Grandparents' and Mother's houses and found she was happy at both.  B.J.Y. had told her repeatedly that she wanted to live with Mother.  She opined that it was important for B.J.Y. to have a connection with both Grandparents and Mother.  She was concerned about the emotional and physical danger to the child because of Mother's past involvement with the criminal justice system and Mother's inability to accept her responsibility for her past actions.  She also opined that Grandparents' home was a more stable environment.  Although this testimony supports a finding that the first *Holley* factor would favor Mother having primary care, the testimony also supports our finding that the other *Holley* factors favor Grandparents.

We find that there was sufficient evidence for the trial court to exercise its discretion.  In considering the *Holley* and other best-interest factors, we also find that the evidence was legally and factually sufficient to support the trial court's finding that appointing Grandparents joint managing conservators with the exclusive right to determine B.J.Y.'s primary residence was in the best interest of B.J.Y.  Consequently, we find that the trial court did not abuse its discretion.

For the reasons stated, we affirm the trial court's judgment.


Josh R. Morriss III
Chief Justice


Date Submitted:     April 13, 2020
Date Decided:      May 6, 2020

15