NO. 07-10-00313-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 



MARCH
22, 2011

 



 

IN THE INTEREST OF N. R. T., A CHILD



 



 

 FROM THE 320TH DISTRICT COURT OF
POTTER COUNTY;

 

NO. 74,346-D; HONORABLE DON R. EMERSON, JUDGE



 



 

Before CAMPBELL
and PIRTLE, JJ., and BOYD, S.J.[1]

 

 

OPINION

 

            Appellants
P.T., the father, and C.T., the mother, appeal the July 2010, final order of
the trial court terminating their parental rights to N.R.T. and appointing appellee the Texas Department of Family and Protective
Services permanent managing conservator of the child.  We will affirm the order of the trial court.

Background

            N.R.T.
was born January 27, 2006.  During May
and June 2006, the father was sentenced to six years confinement in prison for
robbery and one year in a State jail facility for failing to register as a sex
offender.  In September 2007, the mother
was sentenced to four years in prison for robbery.  The mandatory release date for the father is
June 2012, and May 2011 for the mother.

When the mother was jailed, N.R.T.
was left in the care of her paternal grandmother C.S.  In June 2007, the Department opened a case
regarding N.R.T. when C.S. tested positive for cocaine and marijuana, and was
found to be caring for the child while intoxicated.  A hair follicle drug analysis of N.R.T. was
also positive for cocaine.  The
Department was appointed N.R.T.’s temporary managing conservator and placed her
in the foster care of K.V.

The trial court convened a
disposition hearing in the case on December 12, 2008.  The father and the mother appeared in person
with appointed counsel.  The Department’s
live petition sought termination of the parental rights of the father and the
mother on multiple predicate grounds. 
Counsel for the Department announced an agreement among the parties
whereby the Department would become the permanent managing conservator of
N.R.T., the father and the mother would pay child support beginning January 1,
the father and the mother would have “no visitation at the time, no possessory
conservatorship” with the status modified “at the time they get out of prison,
assuming that they show themselves to be fine, decent, upstanding people,” and
N.R.T. would possibly be placed with her maternal grandmother, J.G., depending
on the outcome of an evaluation of her home. 
The trial court signed the resulting order on February 9, 2009.  The order was entitled “final order” and
provided “that all relief requested in this case and not expressly granted is
denied.”

            The
Department evaluated the home of J.G. as a possible placement for N.R.T., but
did not approve the placement.  According
to J.G., her home was not approved because her twenty-year-old daughter, who
then lived in the home, refused a hair follicle drug analysis.

            In
April 2009, the foster mother K.V. filed a plea in intervention in the case
seeking adoption of N.R.T.  K.V. filed a
pleading in June 2010, seeking termination and adoption.  

On December 31, 2009, the Department
filed a pleading seeking termination of the parental rights of the father and
the mother to N.R.T.  The case was tried to the bench on June 25, 2010.  Before the presentation of evidence
commenced, counsel for K.V. verbally withdrew her live plea in intervention to
prevent a continuance.  N.R.T.’s caseworker
testified for the Department.  She told
the court that since December 2008, the father sent N.R.T. one birthday card;
otherwise, neither parent contacted N.R.T. 
According to K.V., the mother sent N.R.T. a note before her
imprisonment; otherwise, K.V. received no correspondence for N.R.T.  According to the caseworker, two days before
trial the attorney for the father informed her that
unidentified relatives offered a placement for N.R.T.  In the opinion of the caseworker, termination
of the parental rights of the father and the mother was in the best interest of
N.R.T. because “[s]he has not known her parents.  She has not been able to bond with her
parents.  And she has been in the foster
home, and has bonded and attached.  She
sees [K.V.] as her mother.”  The
Department intended to seek adoption of N.R.T. by K.V. if the court granted
termination.  The caseworker agreed that
although the father and the mother were ordered to make child support payments
by the February 2009 order it was “reasonably anticipated” they could not
comply because of their incarceration.

            The
mother testified she has three other children. 
At the time, they were in the care of her grandparents.  She had not seen N.R.T. since May 2007 and
acknowledged knowing nothing of her daughter’s interests since age one.  The mother had not sent N.R.T. cards since
2007.  Since February 2009, the mother
received four or five letters from the father concerning N.R.T.  While in prison the mother completed a
parenting class, earned a G.E.D., and began a computer class.  As for her plans on release from prison, the
mother indicated she intended to attend school. 
She planned to live with her mother. 
When asked how she could support four children, the mother explained she
would find a job and receive help from her family.

            The
father testified that N.R.T. is his only child, and that he cared for her for
three months until he went to prison.  He
knew his daughter liked the movie The
Little Mermaid and was aware she took medication for A.D.H.D. and sleep and
received physical therapy for a foot condition. 
According to the father, he sent N.R.T. drawings, cards, and letters
through the Department caseworker but received no acknowledgment of receipt.  Sometime after January 2010, he sent the
Department letters identifying his mother and siblings as alternative
placements.  He believed he provided the
Department his mother’s new address and telephone number.  The father said he wrote the Department
several times with no response, and that since February 2009 he had written his
mother-in-law J.G., the Department, and the mother, and while in the county
jail on a bench warrant telephoned his mother, all concerning N.R.T.  Asked how he could provide a home for N.R.T.
while in prison, the father explained he would like the child placed with his
mother C.S., “now that she’s cleaned herself back up.”  By this he meant she was “struggling” to
complete probation having been convicted “of cocaine.”  His mother once received in-patient
psychiatric care.  He added that his
father and the mother’s family could provide financial assistance and other
relatives would lend “physical and emotional” support.  The Department denied a home evaluation of
his father because of an unspecified criminal record.  When released from prison, the father planned
to live with his mother until he was able to rent a home.  He intended to work at his uncle’s paint and
body shop.  On cross-examination, the
father indicated he had not sought financial support from his family for N.R.T.
because “the Department seems to have everything under control with x-ing (sic) us out of the situation.”

            The
trial court’s final order terminated the parental rights of the father and the
mother to N.R.T.  It found termination
was in the best interest of N.R.T. and the father committed the predicate acts
specified by Family Code § 161.001(a)(N),(O) and (Q)
and the mother committed the acts specified by § 161.001(a)(N) and (O).[2]  The father and the mother
each appeal.

Analysis

Pleading deficiencies

            By
their first issues, the father and the mother assert the trial court lacked
authority to terminate their parent-child relationship with N.R.T. because the
Department grounded its live petition on Family Code § 156.101, governing
modification of an existing order, rather than on § 161.001, governing
termination of the parent-child relationship. 


            The
Department’s December 31, 2009 pleading, on which termination was granted, was
entitled, “Petition to Modify Parent-Child Relationship.”  In its body, the pleading identified the
February 2009 order and alleged the requested modification was the termination
of the parental rights of the father and the mother under § 161.001.  In specific paragraphs, the pleading alleged
in statutory language that the father and the mother each committed multiple
predicate acts under § 161.001(1) and termination was in the best interest of
N.R.T.  Modification was otherwise not
mentioned.

            A
trial court may terminate the parent-child relationship under § 161.001 if the
fact-finder finds by clear and convincing evidence that a parent has committed
one or more of the enumerated predicate acts and termination is in the best
interest of the child.  Tex. Family Code
Ann. § 161.001(1)(A)-(T),(2) (West Supp. 2010); In re J.P.B., 180 S.W.3d 570, 572 (Tex.
2005).  The title of the Department’s
live petition is not determinative since a court determines the nature of a
pleading by its substance and not merely its title.  See State Bar v. Heard, 603
S.W.2d 829, 833 and n.5 (Tex. 1980) (“[w]e look to the substance of a plea for
relief to determine the nature of the pleading, not merely at the form of title
given to it”); Tex. R. Civ. P. 71 (misnomer of pleading).  

Beyond the pleading’s title, its
reference to modification does not alter the document’s expressed purpose,
termination under § 161.001.  “Texas
follows a ‘fair notice’ standard for pleading, which looks to whether the
opposing party can ascertain from the pleading the nature and basic issues of
the controversy and what testimony will be relevant.”  Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896 (Tex.
2000).  “A petition for the
termination of the parent-child relationship is sufficient without the
necessity of specifying the underlying facts if the petition
alleges in the statutory language the ground for the termination and that
termination is in the best interest of the child.”  Tex. Fam. Code Ann. §
161.101 (West 2008).  There is no
record indication that the father or the mother specially excepted
to the pleading and received an adverse ruling. 
The father and mother may not challenge the sufficiency of the
Department’s live petition for the first time on appeal.  Tullis v. Georgia-Pacific Corp., 45 S.W.3d
118, 124 (Tex.App.--Fort Worth 2000, no pet.)
(citing Tex. R. App. P. 33.1(a); Tex. R. Civ. P.
90).  But the absence of a trial court
challenge by the father and the mother is not remarkable since the Department’s
pleading afforded the father and the mother fair notice that the Department
sought termination of parental rights under § 161.001.  Neither appellant contends
otherwise, and the record makes clear the case was tried on the issue of
termination under § 161.001, the trial court signed an order of termination,
and the court made supporting findings of fact and conclusions of law.  We overrule the first issue of the father and
the first issue of the mother.

            Legal
and Factual Sufficiency Issues

            The
father and mother challenge the legal and factual sufficiency of the evidence
supporting the trial court’s findings of predicate conduct necessary for
termination and that termination was in the best interest of N.R.T.

When reviewing factual findings
required to be made by clear and convincing evidence, we apply a standard of
review that reflects this burden of proof. 
In re S.M.L.,
171 S.W.3d 472, 476 (Tex.App.--Houston [14th Dist.]
2005, no pet.).  A legal
sufficiency review requires we consider all of the evidence in the light most
favorable to the finding to determine whether a reasonable fact finder could
have formed a firm belief or conviction that the finding was true.  Id.
(citing In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002)). In doing so, we assume the fact finder resolved disputed
facts in favor of the finding if a reasonable fact finder could do so, and we
disregard all evidence that a reasonable fact finder could have disbelieved or
found to have been incredible.  Id. 
However, because of the heightened standard, we must also be mindful of
any undisputed evidence contrary to the finding and consider that evidence in
our analysis. In re J.F.C., 96 S.W.3d
at 266 (“[d]isregarding undisputed facts that do not
support the finding could skew the analysis of whether there is clear and
convincing evidence”).

A factual sufficiency review, in a
proceeding to terminate the parent-child relationship, requires consideration
of the entire record to determine whether a factfinder
could reasonably form a firm belief or conviction that the reviewed finding was
true.  In re C.H., 89 S.W.3d 17, 28 (Tex.
2002). “If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not credit in favor of
the finding is so significant that a factfinder could
not reasonably form a firm belief or conviction in the truth of its finding,
then the evidence is factually insufficient.” 
In re H.R.M., 209 S.W.3d 105,
108 (Tex. 2006) (quoting In re J.F.C.,
96 S.W.3d at 266).  

            Section
156.101(a)(1) has no application.

By their second issue, the father and
the mother assert the evidence was legally and factually insufficient to
establish a material change of circumstances as required for modification of an
existing order under § 156.101(a)(1).  As
noted, we conclude the case proceeded to disposition in the trial court as one
for termination under § 161.001. 
Evidence of a material and substantial change of circumstances is not
required for termination under § 161.001. 
We will address changed circumstances in our discussion of the
application of § 161.004 to this case.  See Tex. Fam. Code Ann. § 161.004(a)(2) (West 2008).  We
overrule the second issue of the father and the mother, as presented.

Predicate Grounds for Termination

Constructive abandonment

            By
her third issue, the mother challenges the sufficiency of the evidence
supporting the trial court’s conclusion she constructively abandoned
N.R.T.  The parent-child relationship may
be terminated if a court finds a parent has:

Constructively abandoned the child
who has been in the permanent or temporary managing conservatorship of the
[Department] for not less than six months, and:

(i) the department or authorized agency has made reasonable
efforts to return the child to the parent;

(ii) the
parent has not regularly visited or maintained significant contact with the
child; and

(iii) the
parent has demonstrated an inability to provide the child with a safe
environment.

Tex. Fam. Code Ann. § 161.001(1)(N) (West Supp. 2010). 
It is not disputed that at the time the Department moved for termination
in December 2009, it had been N.R.T.’s managing conservator for at least six
months.  The mother contests the court’s
findings the Department made reasonable efforts to return the child to her, she
failed to maintain significant contact with the child, and she demonstrated an
inability to provide the child with a safe environment.

The mother first points to what she
perceives as inconsistency between the terms of the February 2009 order, which
denied her possession and access to N.R.T.,[3]
and the Department’s position that her failure to maintain significant contact
with the child supports termination. The Department argues an order denying
access to a child does not prevent a parent from communicating with the child
by writing.[4]  We need not here consider the effect of the
February 2009 order on the mother’s ability to maintain significant contact
with the child because the evidence shows that the level of the mother’s contact
with N.R.T. was no different before the order than after its rendition.  The mother testified to no contact with
N.R.T. during 2008, and from her testimony the court could have concluded that
at the time of trial she knew little about her daughter.  She said she had written the Department to
ask about N.R.T., but she could not remember when she wrote last.

With respect to the Department’s
efforts to return N.R.T. to the mother, there was evidence of service
plans.  Implementation of a family
service plan by the Department is ordinarily considered a reasonable effort to
return a child to its parent.  In re M.R.J.M., 280
S.W.3d 494, 505 (Tex.App.--Fort Worth 2009, no pet.).  To that evidence we add the testimony showing
the Department’s agreement to the terms of the February 2009 order calling for
evaluation of the home of J.G. as a possible placement, and its evaluations of
other family members as possible placements. 
See In re D.S.A., 113 S.W.3d 567, 573 (Tex.App.--Amarillo 2003, no pet.) (returning child to
incarcerated parent under § 161.001(1)(N) may include placement with family
member); accord, In re K.J.T.M., No. 06-09-0104-CV, 2010 Tex. App. Lexis 3057, at
*11 (Tex.App.—Texarkana, April 27, 2010, no pet.) (citing Department’s efforts, “although futile,” to place
child with relatives as supporting finding of reasonable efforts to return
child to incarcerated parent).   

The evidence the mother demonstrated
an inability to provide a safe environment for N.R.T. begins with that showing
she left the child in the care of C.S. in 2007. 
The child was removed when both C.S. and the child tested positive for
cocaine.  Since the child’s removal, her
only environment has been that provided through foster care.  The February 2009 order contains the trial
court’s finding that appointment of a relative of the child as managing
conservator would not be in the child’s best interest.  At the hearing that led to the February 2009
order, the Department announced its intention to evaluate the maternal
grandmother’s home as a possible placement. 
In a June 2009 placement review hearing, the Department told the court
the home study “did not pass,” and the caseworker testified to her opinion that
it was not in N.R.T.’s best interest that she “go with relatives.”  The only evidence in the record directly
addressing the reason the child was not placed with J.G. is her own trial
testimony.  As noted, J.G. said her home
was not approved because her twenty-year-old daughter, who then lived in the
home, refused to submit to a hair follicle drug analysis.  The father testified at trial that the
Department “did a home evaluation on [the paternal grandfather] and [the
Department] said he was an unfit parent because of his past criminal
record.”  

The mother attempts to avoid the
application of our holding in D.S.A.,
113 S.W.3d at 573, in which we recognized that an incarcerated parent may
provide a safe environment for a child through family members. She argues her
situation is distinguished from those described in D.S.A. by the terms of the February 2009 order denying her
possession and access to N.R.T.  We
cannot agree that the order either prohibited the mother from providing a safe
environment for her child, or excused the consequences of her inability to do
so.  Indeed, as the mother’s brief
recognizes, the denial of her possession and access and the evaluation of the
maternal grandmother’s home were accomplished by the same agreement prior to
entry of the February 2009 order.

The trial court’s implicit acceptance
of the reasons supporting the Department’s rejection of each of the suggested
placements provided a basis for a firm conviction that no family surrogate was
available to provide a safe environment for N.R.T. on the mother’s behalf while
she remained incarcerated.  See D.S.A., 113 S.W.3d
at 573.  The mother acknowledged
she could not provide for N.R.T. while incarcerated.  Based on this record, the evidence was
legally and factually sufficient to support the trial court’s findings that the
mother constructively abandoned N.R.T., as described in § 161.001(1)(N).  We overrule the
third issue of the mother.  

 

 

Conviction, incarceration, and inability to care for the
child.

By his fifth issue, the father
asserts the evidence was legally and factually insufficient to support
termination of his rights under § 161.001(1)(Q).  Subsection Q provides a basis for termination
on a finding that the parent knowingly engaged in criminal conduct that
resulted in the parent’s conviction for an offense and confinement or
imprisonment and inability to care for the child for not less than two years
from the date of filing the petition.  Tex. Fam. Code. Ann. § 161.001(1)(Q)
(West Supp. 2010).  Subsection Q focuses
on a parent’s future imprisonment and inability to care for the child.  “By looking at future imprisonment and
inability to care for the child, subsection Q purports to protect children
whose parents will be incarcerated for periods exceeding two years after
termination proceedings begin.”  In re A.V., 113 S.W.3d
355, 360-61 (Tex. 2003).  

It is not disputed that the father
was convicted of a criminal offense in 2006 and by the time of trial in June
2010, was incarcerated for four years, and had a projected “long way discharge”
of March 2012.  Whether measured from the
filing of the Department’s initial petition in 2007 or its December 2009
pleading, the father’s criminal conduct resulted in his incarceration for a
period exceeding two years.[5]  But an analysis under subsection Q also
considers whether the incarcerated parent will be unable to care for the child
during that period.  In re H.R.M., 209 S.W.3d at 110 (citing In re A.V., 113 S.W.3d at 360).

Acknowledging his own inability to
care for N.R.T. during his incarceration, the father testified that after the
failed home study of his mother-in-law J.G., he sent the department a letter
stating his mother C.S. “had cleaned herself up” and more than one sibling was
willing to care for N.R.T.  He could not
recall providing the department the names and addresses of his siblings,
however.  No sibling of the father
testified nor was evidence admitted of an identified sibling of the father
willing and capable of caring for N.R.T. 
The father broadly asserted during his testimony that his family could
be relied upon to care for N.R.T. until his release from incarceration, but the
evidence of the removal of the child from the paternal grandmother C.S., the
Department’s concern over the paternal grandfather’s unspecified criminal
record, and the evidence no other family member had stepped forward at any time
during the some three years N.R.T. had been in foster care gave the trial court
good reason to discount the assertion. 
In this bench trial, it was the task of the court alone to assess the
credibility and demeanor of those testifying before it.  See, e.g., H.R.M., 209 S.W.3d at 109. 

J.G. testified at trial.  She said her other daughter was no longer in
the home and she was willing to accept placement of N.R.T.  She gave a positive response to a question
asking whether she had the present ability to provide care for N.R.T., and
testified to her work schedule.  J.G.’s
expression of willingness to “take N.R.T.” at the time of trial is evidence
contrary to a finding the father was unable to care for the child, see D.S.A., 113 S.W.3d at 573, but
viewed in its context within the entire record, it is not so persuasive as to
render the Department’s evidence of the father’s inability to care for the
child factually insufficient.  J.G. said
she had not “lately” expressed reservations about accepting the placement, but
acknowledged she had done so previously. 
And she had neither seen nor had any contact or communication with her
granddaughter since the child was a year old. 
Asked if she had sent the child anything, she responded, “I don’t even
know where [N.R.T.] is.”  In light of the
entire record, and giving deference to the proper role of the fact finder, we
find her testimony was not so significant as to preclude the trial court from
reasonably forming a firm conviction that the father, individually or through
family surrogates, was unable during his incarceration to care for N.R.T.  See
H.R.M., 209 S.W.3d at 108 (standard for factual sufficiency review).

The father also argues the facts
supporting termination under § 161.001(1)(Q) existed
before the agreed order of February 2009, and therefore the doctrine of res judicata barred their consideration by the trial court at
the June 2010 trial.  We disagree.  Family Code § 161.004(b) allowed the trial
court’s consideration of this evidence. 
Further, as more fully addressed in our discussion of § 161.004(a)
below, res judicata did not bar a judgment of
termination based on evidence existing at the time of the February 2009
order.  On this record, the trial court
could have reached a firm conviction that the requirements of § 161.001(1)(Q) were met as to the father, making the evidence legally
and factually sufficient.  We overrule
the father’s fifth issue.

Because we conclude sufficient
evidence supports the trial court’s findings that the mother constructively
abandoned N.R.T. and the requirements of § 161.001(1)(Q)
were met as to the father, it is unnecessary for us to review the evidence
supporting the other predicate grounds for termination found by the trial
court.  See In re A.V., 113 S.W.3d at 361 (proof of one predicate ground
for termination, with finding termination is in child’s best interest,
sufficient to support termination); Tex. R. App. P. 47.1 (appellate court must
address all issues raised and necessary to disposition of appeal).

            Best
Interest

            In
the sixth issue of the father and the fifth issue of the mother, the appellants
assert the evidence was insufficient to support the trial court’s finding that
termination of the parent-child relationship was in the best interest of N.R.T.

The Supreme Court of Texas has
identified factors for consideration by the trier of
fact in determining whether termination is in the best interest of the child,
including: the desires of the child; the emotional and physical needs of the
child now and in the future; the emotional and physical danger to the child now
and in the future; the parental abilities of the individuals seeking custody;
the programs available to assist these individuals to promote the best interest
of the child; the plans for the child by these individuals or by the agency
seeking custody; the stability of the home or proposed placement; the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not proper; and any excuse for the acts or omissions of the
parent.  Holley v. Adams, 544 S.W.2d 367, 372
(Tex. 1976).  However, these considerations are not exhaustive nor is proof of each
a condition precedent to termination of the parent-child relationship. In re C.H., 89 S.W.3d at
27.  The best interest analysis
evaluates the best interest of the child, not the parent.  In re S.A.P., 169 S.W.3d 685, 707 (Tex.App.--Waco
2005, no pet.).

The evidence supporting the statutory
grounds for termination may also be used to support a finding that the best
interest of the child warrants termination of the parent-child
relationship.  In re C.H., 89 S.W.3d at 28; In re P.E.W., 105 S.W.3d 771, 779 (Tex.App.--Amarillo 2003, no pet.).  And a best interest analysis may consider
circumstantial evidence, subjective factors, and the totality of the evidence
as well as the direct evidence.  In re S.H.A., 728 S.W.2d
73, 86-87 (Tex.App.--Dallas 1987, writ ref’d n.r.e.).   

The law recognizes a strong
presumption that the best interest of a child will be served by preserving the
parent-child relationship.  Swate v. Swate,
72 S.W.3d 763, 767 (Tex.App.--Waco 2002, pet.
denied).  But it also recognizes
that the prompt and permanent placement of the child in a safe environment is
presumed to be in the child's best interest. 
In re J.F.,
No. 02-08-0183-CV, 2009 Tex. App. Lexis 2130, *17 (Tex.App.--Fort
Worth March 26, 2009, no pet.) (mem.
op.) (citing Tex. Fam. Code Ann. § 263.307 (West
2002)). 

At the time of trial, N.R.T. was over
four years old and had been in the foster care of K.V. since she was seventeen
months old.  According to K.V., the two
bonded and N.R.T. thought of K.V. as her mother.  N.R.T. called K.V. “mom.”  K.V. desired to adopt N.R.T. and attempted to
intervene in the case for that purpose. 
N.R.T. was the first foster child in the home of K.V. although by the
time of the June 2010 trial K.V. had a second foster child in her care.  According to K.V., N.R.T. has asked about her
father but not her mother and has made no reference to her grandparents.  The Department caseworker stated when asked
about her biological parents, N.R.T. grows angry and responds, “‘No, my momma
is [K.V.].’”

The father and the mother have had no
meaningful contact with their daughter since she entered foster care in 2007,
either directly by written communication or through their families as
surrogates.  The father testified he sent
mail for her to the Department, but the caseworker’s testimony cast doubt on
the Department’s receipt of such mail. 
The caseworker testified flatly she had no inquiry from the father about
his daughter’s welfare since she took the case in June 2009, except in response
to the Department’s termination pleading. 


Neither parent made
child support payments or offered monetary support of N.R.T. despite their agreement
for child support and evidence of family members capable of providing
assistance.  

The Department’s plan after
termination was N.R.T.’s adoption by her foster mother.  The father’s plan for care of N.R.T. was her
placement with his mother C.S. until he or the mother was released from
prison.  The mother’s plan was similar,
placement with her mother J.G. until she or the father could resume care of the
child.  

Although the parties did not so
testify, their plans for N.R.T., both before and after their release from
prison, hinge on obtaining a modification of the February 2009 order naming the
Department permanent managing conservator. 
Absent modification of the order to authorize the placement plans of the
father and the mother, and absent parental termination, N.R.T. will remain in
the care of the Department.  See Tex. Fam. Code Ann. § 153.371(1),(2),(10) (West 2008) (Department as sole managing
conservator has the right of physical access of the child, the right to
designate the child’s primary residence, and the duty of care, control,
protection, and reasonable discipline of the child).  But maintaining N.R.T. in this state of limbo
defeats the legislative intention that children not remain indefinitely in
foster homes.  In re M.G.D., 108 S.W.3d 508, 515 (Tex.App.--Houston [14th Dist.] 2003, pet. denied).

Considering all the evidence in
relation to the best interest factors in the light most favorable to the
court’s finding, particularly that concerning the need for and lack of
meaningful support from family surrogates, we conclude a reasonable trier of fact could have formed a firm belief or conviction
that termination was in the best interest of N.R.T.  And viewing all the evidence in a neutral
light, we conclude that the disputed and undisputed evidence favoring and
disfavoring the finding permits a reasonable factfinder
to form a firm conviction and belief that termination was in the best interest
of N.R.T.  The evidence supporting the
court’s finding that termination of the parental rights of the father and the
mother was in the best interest of N.R.T. is legally and factually
sufficient.  See Holley, 544 S.W.2d 367; In
re S.M.L.D., 150 S.W.3d 754, 756 (Tex.App.--Amarillo
2004, no pet.). We overrule the sixth issue of the father and the fifth issue
of the mother.

Res Judicata

Although not expressly assigned as
error, the father and the mother intersperse their arguments challenging the
legal and factual sufficiency of the evidence with a contention that evidence
of events preceeding the December 12, 2008 hearing
was precluded by res judicata.  The Department also addresses the issue of
res judicata in its brief.[6]  

During the June 2010 bench trial, the
trial court admonished the parties that it would not consider evidence
predating “December 2008.”  At the
conclusion of the trial, the trial court directed the attorneys to submit
briefs addressing, among other things, the issue of res judicata.  In its brief, the Department argued under §
161.004(b) the court could consider evidence from prior hearings in the case,
as well as evidence of events predating December 2008.  The court’s findings reflect consideration of
evidence of facts predating December 2008, but its findings and conclusions do
not address res judicata or the requirements of §
161.004(a).  In the absence of findings on
these ultimate issues, we presume the trial court made all fact findings
necessary to support the order of termination. 
Smith v. Smith,
22 S.W.3d 140, 149 (Tex.App.--Houston [14th Dist.]
2000, no pet.).

Ordinarily res judicata
bars a subsequent suit if the matters asserted in the subsequent suit arise out
of the same subject matter as a previous suit and which matters, through the
exercise of reasonable diligence, could have been litigated in the prior
suit.  See Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav., 837
S.W.2d 627, 631 (Tex. 1992).  But we
agree with the Department that res judicata did not
bar the court’s consideration here of events predating its February 2009 order
denying termination.  

            Family
Code § 161.004, entitled “Termination of Parental Rights After
Denial of Prior Petition to Terminate,” provides:  

(a) The court may terminate the parent-child relationship after
rendition of an order that previously denied termination of the parent-child
relationship if:

(1) the petition under this
section is filed after the date the order denying termination was rendered;

(2) the circumstances of the child, parent, sole
managing conservator, possessory conservator, or other party affected by the
order denying termination have materially and substantially changed since the
date that the order was rendered;

(3) the parent committed an
act listed under Section 161.001 before the date the order denying termination
was rendered; and

(4) termination is in the
best interest of the child.  

(b) At a hearing under this section, the court may
consider evidence presented at a previous hearing in a suit for termination of
the parent-child relationship of the parent with respect to the same child.

Tex. Fam. Code Ann.
§ 161.004 (West 2008).  

Order of pleadings, § 161.004(a)(1)

Whether the order signed on February
9, 2009, was rendered on December 12, 2008, or February 9, matters not since
the Department’s petition seeking termination was filed December 31, 2009.  

Material and substantial change of
circumstances, § 161.004(a)(2)

There are no definite guidelines as
to what constitutes a material and substantial change in circumstances under §
161.004.  In the Interest of B.L.H.,
01-06-0817-CV, 2008 Tex. App. Lexis 2212, at *16 (Tex.App.--Houston
[1st Dist.] Mar. 27, 2008, no pet.) (mem. op.) (citing
Wright v. Wright, 610 S.W.2d 553, 555
(Tex.Civ.App.--Houston [1st Dist.] 1980, no
writ)).  Rather the determination is made
by the facts of each case.  Wright, 610 S.W.2d at
555.

At the December 12, 2008 hearing, the
parties agreed the Department should be appointed the permanent managing
conservator of N.R.T., and the Department was so appointed by the February 2009
order.  That same order denied all other
relief sought, including termination. 
The parties further agreed, however, to a home study of J.G., as a
potential temporary placement for N.R.T. 
After the February 2009 order, the home study was completed but the home
of J.G. was rejected as a placement for N.R.T. 
This left N.R.T. in foster care with K.V. while the father and the
mother remained in prison.  Meanwhile,
K.V. desired to adopt the child and undertook legal proceedings toward that
end.

We conclude these facts, which are
undisputed, evince a material and substantial change of circumstances of the
child, the Department and the foster mother after the rendition of the order
denying termination. If for no other reason, the failure of J.G.’s home study
worked a substantial change in the analysis of the best interest of the child.  Without a feasible family member placement,
termination became significantly more likely. 
And the failure of the home study and the further passage of time
undoubtedly encouraged K.V. to seek adoption. 

            Prior
commission of predicate act, § 161.004(a)(3) 

Subsection (3) requires proof the
parent committed an act listed under § 161.001 before the date the order
denying termination was rendered.  Among
the grounds for termination alleged by the Department in December 2009 was that
the father and the mother had engaged in criminal conduct resulting in
conviction and confinement and inability to care for N.R.T. for not less than
two years from the date of filing of the June 2007 petition.  Tex. Fam. Code Ann. § 161.001(a)(Q) (West Supp. 2010). 
The record establishes both parents’ conviction and confinement for a
period of more than two years after the 2007 petition’s filing.  The court could have found the evidence we
have discussed, specifically including the evidence of the proposed but disapproved
family placements, demonstrated the parents’ inability to care for the child
during their incarceration.  The record
thus supports a finding that both parents committed an act listed under §
161.001 before the date the order denying termination was rendered, satisfying
the requirement of § 161.004(a)(3).

            As
discussed, we have concluded the evidence was legally and factually sufficient
to support the trial court’s findings that termination of the parent-child
relationships between both parents and N.R.T. was in the child’s best interest.

            Under
§ 161.004(b) the trial court was free to consider evidence predating December
2008.  Moreover, we conclude, its implied
findings supporting termination under § 161.004(a) are supported by sufficient
evidence.  

Conclusion

            Having
overruled each of the issues of the father and the mother necessary to our
disposition of the case, we affirm the order of the trial court.

                                                                                                James
T. Campbell

                                                                                                            Justice











[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of
Appeals, sitting by assignment.  





[2]  See Tex. Fam. Code Ann. § 161.001(1)(N),(O),(Q) (West Supp. 2010).





[3] The order contained the court’s finding that
possession or access by either parent would endanger the physical or emotional
welfare of N.R.T.  See Texas Family Code § 153.191 (requiring such a finding to deny
parent possession or access).  Tex. Fam. Code Ann. § 153.191 (West 2008).





 

[4] Cf. In re
Walters, 39 S.W.3d 280, 284-85 (Tex.App.—Texarkana
2001, no pet.) (discussing elements of right of
access to child).





[5] The father was eligible for parole, and had been
considered.  The availability of parole
is relevant to determine whether an incarcerated parent will be released within
two years, but because parole decisions are inherently speculative, its
availability does not preclude a firm conviction or belief that the parent will
remain incarcerated for at least two years. 
H.R.M., 209
S.W.3d at 109. 





[6]  In its brief
on appeal, the Department argues the father and mother did not sufficiently
plead res judicata. 
We do not address that argument.